O. C. ELLIS, APPELLEE, V. OMAHA COLD STORAGE COMPANY, APPELLANT.

FILED FEBRUARY 11, 1932. No. 27847.

*Brogan, Ellick & Van Dusen,* for appellant.

*Leon & White, contra.*

Heard before Goss, C. J., Dean and Eberly, JJ., and Raper and Ryan, District Judges.

Raper, District Judge.

The appellee, plaintiff below, in his amended petition alleges that he was employed by the defendant company, appellant, in its office from 1920 to March 31, 1928; that the fiscal year of defendant company during said period commenced on April 1, and ended March 31 of the year following; that about May, 1927, the plaintiff received a bonus from defendant of $450 in cash, for the fiscal year preceding March 31, 1927; that about June, 1927, the defendant company by its general manager and vice-president entered into an oral agreement with plaintiff that if plaintiff would remain in the employ of defendant until March 31, 1928, the defendant would pay to plaintiff a bonus at the end of that fiscal year, not less than $450, and would be equal to the bonus paid plaintiff for the previous year, provided the defendant made a profit during the year and paid a bonus to other office employees for said fiscal year; that pursuant to said agreement plaintiff did remain in the defendant's employ until March 31, 1928, and defendant did make a profit and did pay a bonus to other office employees. Plaintiff asks judgment for $450 with interest.

The defendant company in its answer denies the allegations in the petition, except certain admissions. It admits the employment of plaintiff, and that plaintiff received a bonus for the year ending March 31, 1927, of $450, and alleges that defendant has been paid all amounts due him as such employee. The defendant further alleges that plaintiff on September 19, 1929, began an action on said alleged claim for the bonus in the municipal court in Omaha, wherein he based his said claim upon an oral agreement that, if plaintiff would remain in the employ of the defendant continuously from some time in June, 1927,

to March 31, 1928, the defendant company would pay to plaintiff a bonus at the end of the fiscal year ending March 31, 1928, which bonus would be based on his weekly salary and extra monthly check drawn from April 1, 1927, to March 31, 1928, and that in addition said bonus would be in a sum based on the defendant's profits, and upon bonuses paid to other employees who received a salary during said period in an amount equal to the salary received by plaintiff. The defendant resisted that claim and denied the alleged agreement, and defended said action in said municipal court; and on a trial of said cause on October 2, 1929, plaintiff testified under oath in said court that said oral contract was as set forth in his petition, and was his complete agreement with the defendant; that during the course of the cross-examination of plaintiff he voluntarily dismissed the action; that thereafter the plaintiff, on October 2, 1929, commenced an action in the district court for Douglas county, upon the same claim, wherein plaintiff in his petition based his claim upon the agreement as alleged in the petition in the municipal court. The defendant answered said petition denying the alleged agreement, and upon a trial to a jury in the district court, on January 27, 1930, said plaintiff again testified that the contract as made by him with defendant was as set forth in his petition filed therein; that during the course of the examination of plaintiff and upon said trial, the court indicating that said contract was too indefinite and uncertain for enforcement, plaintiff voluntarily dismissed said action without prejudice, and thereupon brought this action, alleging said agreement as set forth in the petition, and defendant pleads that plaintiff is estopped from asserting said oral agreement to be as alleged in the petition filed in this case. Plaintiff replied and the cause was tried to a jury, and verdict and judgment given in favor of plaintiff for amount claimed. Defendant company appeals. At the close of the testimony, the defendant moved the court to direct a verdict in its favor. The motion was overruled.

At the trial it was admitted that the defendant made a profit for that year and paid bonuses to other office employees. The plaintiff, Ellis, testified in the trial to substantially the facts alleged in the petition. His testimony was disputed by Mr. Hyson, the vice-president and manager of the defendant company, the person with whom Ellis said he made the agreement. Mr. Hyson denied that he had any such agreement, and denied that he promised or agreed to pay any bonus, and said nothing was mentioned in the conversation about paying a bonus to Ellis. Ellis voluntarily quit the employ of the company on the 31st day of March, 1928, and was paid his salary to that date, without anything being mentioned about a bonus. The first reference to a bonus was in a letter written by appellee to Mr. Hyson on July 20, 1929, in which he said: "Would like to have you review your record of salary paid me during the period April 1, 1927, to March 31, 1928, and believe you will find that in line with your verbal agreement an additional amount is due me, based on considerations accorded employees as of record March 31, 1928; also conforming to practices of the previous year, as well as years prior to that. You appreciate that I completed the full year and should have been given consideration the same as others, at least to the extent of equaling my salary the previous year." Mr. Hyson did not reply to this letter. Mr. Ellis was paid a larger salary for that year.

About six or seven weeks after March 31, 1928, Mr. Ellis talked to Mr. Hyson about getting his job back, and at that time made no mention of a bonus. On September 19, 1929, appellee began an action against appellant in the municipal court in Omaha, and in that case alleged his employment, and that it was the practice and custom of the company, and particularly with plaintiff, to pay such employees in a three-fold manner, to wit, (1) a regular weekly salary; (2) an additional monthly salary; (3) a lump sum payment at the end of each fiscal year ending March 31, known as a bonus, based on the profits of the defendant company for the fiscal year immediately preceding; that plaintiff's

salary and manner of employment was based on said three-fold manner of payment; that about the month of June, 1927, the defendant company by and through its vice-president and general manager entered into an oral agreement that if plaintiff would remain in the employ of the defendant company until March 31, 1928, then the company would pay plaintiff a bonus at the end of that fiscal year, which bonus would be based on his weekly salary and extra monthly check drawn from April 1, 1927, to March 1, 1928, and that in addition said bonus would be in a sum based on the profits of the company on the fiscal year and based on the bonus paid to other employees of the defendant company who received a salary during said period in an amount equal to the salary received by plaintiff. He then alleges the amount of his salary, and that the company did earn a profit, and the petition continues: "That based upon the agreement of June, 1927, the profits of the company during said fiscal year ending March 31, 1928, and the bonus paid to the other office employees for said period receiving a salary in an amount equal to plaintiff's salary, and based upon the general practice and custom of previous years, plaintiff was entitled to receive a bonus of $750." And he prayed for judgment of $750 and interest. The defendant answered and trial had.

Appellee was examined as a witness in that case, and testified to substantially the allegations of that petition, and that in the conversation Mr. Hyson told him, " 'We cannot pay bonuses unless we make profits.' And he says, 'Bonuses are based on our profits.' And he says, 'In the event we don't make profits, and we pay anybody else bonuses, we will give you the same consideration as we give others in accordance with the salary you draw.' " (The word "don't" as above quoted evidently means "do.") And Mr. Hyson stated that if plaintiff remained in the employment of the company for the remainder of the year and they made a profit then the company would pay plaintiff a bonus and give him the same consideration they gave other employees. Plaintiff was questioned as to whether

he had stated all the conversation and said he had told what he remembered and had gone over his testimony with counsel in preparation for the trial. At the conclusion of his testimony in municipal court, his counsel dismissed the case without prejudice. Immediately after that dismissal plaintiff filed a verified petition in the district court alleging the identical cause of action in almost the exact words of the municipal court petition. The defendant answered, and went to trial in district court before Judge Wright, about January 27, 1930. At that trial plaintiff again testified and gave the verbal agreement with Mr. Hyson in the same language as his testimony in municipal court, and again stated the agreement about the bonus, and that Mr. Hyson said: "If I would stay he would give me the salary as I had been having in the past; and on any bonus it would be based on what they paid the other employees; also as to whether or not they made a profit, and that bonus would be commensurate with the profit that they did make for that year." At the close of plaintiff's direct testimony, plaintiff dismissed the action without prejudice.

On January 31, 1930, appellee herein, as plaintiff, began this action.

In neither of the first two cases he brought did appellee allege or testify that anything was said in the conversation or agreement with Mr. Hyson about appellee receiving the same bonus as the previous year, nor did he mention the sum of $450 as the bonus he was to receive. He admitted in his examination that the reason he did not mention the $450 or that he was to receive the same bonus as the previous year, was because he felt that he drew more salary and would be entitled to $750, and did not want to prejudice his claim for the $750 by mentioning the part of the conversation that would limit his claim to $450. In the first two actions he admits he omitted to state the particular and necessary part of the alleged agreement that would give him the right to recover in order to gain an advantage of the $300, additional to what he was claiming in his last petition.

Appellant stated in his testimony that the practice of the company in previous years was to give bonuses in an amount not determined by either the salary or anything else except what the company thought the employees should have, and the bonus paid to the employees in former years was not uniform as to amounts, nor uniform as to salaries, but was based on what the company determined ought to be given. It may be said that under the practice of the company in former years the bonus paid was a mere gratuity and not based on any agreement, and appellee was aware of it. In his letter asking for bonus, while it does mention a verbal agreement, he evidently was urging his claim upon the said practice of previous years, and not upon any express agreement to receive any definite amount.

In the first two petitions he bases his claim upon the practice of the company to pay employees in the three-fold manner alleged, and his testimony in those two cases shows beyond question that he was not basing his cause of action upon any express agreement as to the amount of the bonus, as he now claims in this, his third attempt to establish a case that would be definite enough to sustain a judgment.

The appellee in the first two cases, if he is to be believed in this case, purposely did not tell the whole truth. The wilful suppression of a material fact is as inexcusable and unjustifiable in a witness as to wilfully misstate a material fact. And there is a strong inference from his letter, and his petitions and testimony in the first two cases, that no statement was made by Mr. Hyson that appellee would be paid $450, or a bonus equal to the bonus paid for the previous year. Only two persons were present at the conversation and only the one conversation was had. Mr. Hyson denies it. He is an interested witness, but had no greater interest than Mr. Ellis.

The appellee insists that the credibility of the testimony of the plaintiff in the case was exclusively for the jury to determine, and that the decision of a question of fact by a jury upon conflicting evidence should not be disturbed on appeal. Courts are careful to avoid invading the province

of a jury, and it is the general rule that where the evidence as to any material issue is such that different conclusions might reasonably be drawn therefrom the issue is one of fact for the jury, and not of law for the court. But there are limitations to this rule. In *Caniglia v. Vacanti*, 106 Neb. 793, the rule is thus stated: "A verdict of a jury, based upon sufficient evidence to support it, and which cannot be said by the court to be clearly wrong, will not be set aside merely because it appears to be against the weight or preponderance of the evidence, as the weight of the testimony is for the jury, and not for the appellate court." In *Trute v. Holden*, 118 Neb. 449, it is held as the law of this state: "A verdict so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not apparent in the record, will be set aside." In *Urban v. Novotny*, 107 Neb. 384, the court held that the jury disregarded material facts, and the verdict must be set aside. Again, in *Exchange Bank v. Gifford*, 102 Neb. 324, a verdict was set aside because the jury disregarded material evidence. In that case the defendant testified positively that he did not sign the note sued upon, but this court found that his evidence was overcome by opposing testimony and the verdict was set aside. That case is a good illustration of the application of the rule announced in *Trute v. Holden, supra*. And in *Clark v. Gell*, 17 Neb. 284, this court said: "Where a verdict is against the clear weight of evidence so that it cannot be sustained on any principle of right or justice, it is the duty of the court to set it aside." There are a great many cases reported in our state both in civil and criminal cases, and indeed in all the other states, to the same effect.

A principle of law applicable in this case is given in *Smith v. Boston Elevated R. Co.*, 184 Fed. 387, 106 C. C. A. 497, 37 L. R. A. n.s. 429, which arose on the second trial of the action. In the second trial plaintiff testified to a version of the accident that was inconsistent with her testimony at the first trial. The opinion says: "As the incon-

sistency is in the testimony of a party, a stricter rule is applicable than where the inconsistency is in the testimony of an ordinary witness. * * * While it is true that upon a second trial the plaintiff's case may be changed or strengthened by new testimony, yet the right of a plaintiff at a second trial to make by his own testimony a complete departure from the case presented at the first trial is not unlimited. A plaintiff, we think, after having sworn to facts resting in his own observation and knowledge before one jury, should not be permitted to swear to facts directly inconsistent and to obtain from a second jury a verdict in his favor which will involve the conclusion that his testimony at the first trial was knowingly false. A party testifying under oath is more than a mere witness. He is an actor seeking the intervention of the judicial power in his behalf, and thus subject to the rule *'allegans contraria non est audiendus,'* which, as stated in Broom's Legal Maxims, page 130, 'expresses in technical language the trite saying of Lord Kenyon that a man should not be permitted to "blow hot and cold" with reference to the same transaction, or insist at different times, on the truth of each of two conflicting allegations according to the promptings of his private interest.' " The court refused her right to recover on her changed testimony.

There is another feature that cannot be overlooked. The appellee in the first two cases was experimenting or toying with the courts. Two futile attempts were made by suppressing material evidence to get favorable judicial action on a claim that he later found could not be sustained, and the defendant was put to the trouble and expense of preparation and participation in those two cases. Such conduct on the part of appellee cannot be sanctioned. To do so would encourage any number of actions on one theory of a transaction, and on failure to get a favorable opinion of the trial judge, to dismiss without prejudice, and start anew on the same or an inconsistent cause of action, and thus harass a defendant without limit, and further to sanction the indefensible feature that one has the right by

repeated efforts to impose on the courts by a false claim and then change his position to meet the exigencies of his case by allegations and testimony inconsistent with the claims and testimony in his prior cases. This of course does not imply that a plaintiff may not dismiss an action without prejudice, nor do we mean to state that when a party has more than one remedy he may not pursue one without being estopped from maintaining another if defeated on his first action. There have been no cases cited, nor has independent research found a case parallel to this.

The evidence is such that the verdict cannot be sustained and for that reason is set aside. Inasmuch as appellee's testimony cannot be corroborated, or substantiated by additional testimony, the judgment is reversed and the cause remanded, with instructions to render judgment against the appellee and dismiss his petition at his cost.

REVERSED.