MARGUERITE GOHLINGHORST, APPELLANT, V. WILLIAM RUESS ET AL., APPELLEES.

20 N. W. 2d 381

FILED OCTOBER 26, 1945. No. 31932.

*Fitzgerald, Tesar & Welch,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda* and *Raymond Crossman,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

CARTER, J.

Plaintiff commenced this action to recover damages for personal injuries which she sustained while riding as a guest in an automobile owned by the defendant William

Ruess, and operated by the defendant Jane Schumacher. At the conclusion of plaintiff's evidence the court directed a verdict for the defendants. Plaintiff appeals.

The evidence adduced by the plaintiff when interpreted most favorable to her, as we are required to do in the case of a directed verdict, is substantially as follows: On October 18, 1941, plaintiff was invited by the defendants to accompany them from Omaha to Lincoln for the purpose of attending the Nebraska-Indiana football game being played on that date. It appears that William Ruess and his sister, Mrs. Schumacher, arrived promptly at 12 o'clock noon at the place where plaintiff and Jane Schumacher were employed. From that point on until the happening of the accident Jane Schumacher drove the car, plaintiff sat beside her in the front seat and Mr. Ruess and Mrs. Schumacher occupied the back seat. The evidence is that they proceeded west out of Omaha on the Dodge street road until they reached Highway No. 31, at which point they turned south. The accident occurred one mile south at the intersection of Highway No. 31 with an intersecting road known in this record as Pacific street.

The automobile in which defendants were riding was being driven at a speed of approximately 60 miles an hour. It appears that the parties had brought their lunch with them and as they were leaving Omaha the parties in the back seat began to eat it. The lunch was then passed up to the parties in the front seat, who also began to partake of it. Plaintiff testifies that on previous trips they had eaten their lunch on the way, but that Jane Schumacher had never before operated the car while eating her lunch. As the car turned south on Highway No. 31, Jane Schumacher was still eating lunch. As they approached the point of the accident, plaintiff testifies that Jane Schumacher was looking over some cookies which had been passed up to them and placed on the seat between them. While so doing she had only her left hand on the wheel. Plaintiff then saw a car entering the intersection from the left and said: "Watch out, Jane." Plaintiff testifies that she did not observe what Jane Schu-

macher did after the warning, but she was of the opinion that the car continued to the point of impact at a speed of at least 60 miles an hour. The plaintiff says that the car approaching the intersection from the east was in motion and that she did not see it stop or alter its course. She says that defendant's car was 185 to 190 feet north of the north side of the intersection when she first saw the car approaching from the east. The collision occurred in the northwest quadrant of the intersection. On cross-examination inquiry was made concerning the speed of the car approaching from the east. The court sustained an objection to the question on the ground that it was improper cross-examination, it not having been inquired about on direct examination. We think the inquiry was entirely proper. Plaintiff had testified that the car was in motion. Certainly she could be interrogated on cross-examination as to the speed of the car, it being an important fact under the issues. We think the trial court's ruling was too restrictive and that defendants' counsel were entitled, after plaintiff testified that she had seen the other car entering and proceeding across the intersection in which the collision occurred, to inquire on cross-examination into its speed, course of travel or any other fact bearing upon the cause of the accident.

On cross-examination it was developed that plaintiff had testified by deposition in a case growing out of the same accident brought by Anna K. Kelty, Special Administratrix, against William Ruess and Jane Schumacher. Plaintiff's testimony contained in the deposition was to the effect that she did not see the car approaching from the east until defendant's car reached a point 15 feet north of the north side of the intersection, at which time she exclaimed: "Watch out, Jane!" She testified that she did not recall what Jane Schumacher was doing immediately prior to the accident. She further testified in the deposition that the car approaching from the east was 25 or 30 feet east of the east line of the intersection when she first saw it and that it was traveling 70 or 75 miles an hour.

It is evident from the record that she told a story which

was very helpful to her host when the deposition was taken on February 18, 1942, and a story contradictory thereto on the material facts more than two years later that was beneficial to her in an action against the host. It is the contention of the defendants that where a plaintiff materially changes her sworn testimony in this manner to meet the exigencies arising in the trial of the case that it is discredited as a matter of law and should be disregarded.

We think the testimony of plaintiff was such that it cannot sustain a judgment in her favor. A plaintiff may not recite upon oath one statement of facts in one judicial proceeding and then, to meet the exigencies of the occasion in the trial of a different suit, recite under oath an entirely different story. As was said in *Gormley v. Peoples Cab, Inc.*, 142 Neb. 346, 6 N. W. 2d 78: "Such conduct cannot be tolerated to the extent, when it is clearly apparent, of requiring a trial judge to submit the credibility of such testimony to a jury, and of permitting a party to mock law and justice."

It is quite evident from this record that the plaintiff's evidence contained in the deposition not only was of great value to the host in defending the action of Anna K. Kelty for the death of her husband, an occupant of the other car, but, if true, it absolved the host of any liability to the plaintiff as his guest. In her action against the host, which she subsequently brought, she attempts to avoid the effect of her previous testimony, when asked if she did not so testify, by mechanically stating that "I don't know" or "I don't remember." In a case identical in principle where the effect of previous evidence was to absolve the defendant from liability and the witness materially changed her evidence to extricate herself from the effect of the former testimony, this court said: "We do not say that the change in the pleadings alone necessarily comes under any inhibited rule, but when accompanied by this material change in the testimony of the witness, for the sole purpose of making out a case, the changes do not find favor and such conduct cannot blindly bind the court so that it must submit to the jury the cred-

ibility of such a witness when to do so merely because of such a general rule would allow the parties to toy with the administration of the law and make a mockery of justice. The motive and purpose were clear. No possible explanation for this change of testimony appears, except that the exigencies of plaintiff's case demanded it." *Peterson v. Omaha & C. B. St. R. Co.*, 134 Neb. 322, 278 N. W. 561.

No satisfactory explanation of the change in the testimony is given in the present case other than the simple expedient that she did not remember making the former statements. It is attempted to be shown that the deposition containing her first statements was taken in the hospital where she had been confined for a period of four months. The implication that any unfairness was practiced is dissipated by the record. At the time the deposition was taken she had been up and about. She had entertained visitors and exercised with the aid of crutches. No opiates had been recently administered and all the evidence except her own was to the effect that she was in possession of all her faculties. She was able to leave the hospital four days after the deposition was taken. Her lawyer was present when the deposition was taken and there is no evidence to indicate that he in any manner failed to protect her interests. Her brother was also present when she was interrogated. The lawyer representing Anna K. Kelty was present, as were the lawyers for others interested in the outcome of the litigation. The record is devoid of evidence that the plaintiff was in any way imposed upon. On the other hand, the motive for adapting the proofs in the present case so as to require its submission to a jury is manifest. The convenient loss of memory to escape the fatal effect of positive sworn testimony on the one hand, and an amazing resurrection of memory more than two years later as to facts and incidents tending to make a case, make the evidence incredible as a matter of law in the absence of any reasonable explanation of the conflict. The trial court is not required to helplessly sit by and permit a litigant to play fast and loose with the processes of the court by insisting at different times under

oath on the truth of each of two contradictory stories according to the exigencies of the particular occasion presenting itself. Courts must be vigilant in suppressing such schemes for the procurement of benefits by one to the detriment of another.

A similar situation existed in *Ellis v. Omaha Cold Storage Co.*, 122 Neb. 567, 240 N. W. 760, wherein it is said: "A principle of law applicable in this case is given in *Smith v. Boston Elevated R. Co.*, 184 Fed. 387, 106 C. C. A. 497, 37 L. R. A. n. s. 429, which arose on the second trial of the action. In the second trial plaintiff testified to a version of the accident that was inconsistent with her testimony at the first trial. The opinion says: 'As the inconsistency is in the testimony of a party, a stricter rule is applicable than where the inconsistency is in the testimony of an ordinary witness. * * * While it is true that upon a second trial the plaintiff's case may be changed or strengthened by new testimony, yet the right of a plaintiff at a second trial to make by his own testimony a complete departure from the case presented at the first trial is not unlimited. A plaintiff, we think, after having sworn to facts resting in his own observation and knowledge before one jury, should not be permitted to swear to facts directly inconsistent and to obtain from a second jury a verdict in his favor which will involve the conclusion that his testimony at the first trial was knowingly false. A party testifying under oath is more than a mere witness. He is an actor seeking the intervention of the judicial power in his behalf, and thus subject to the rule *"allegans contraria non est audiendus,"* which, as stated in Broom's Legal Maxims, page 130, "expresses in technical language the trite saying of Lord Kenyon that a man should not be permitted to 'blow hot and cold' with reference to the same transaction, or insist at different times, on the truth of each of two conflicting allegations according to the promptings of his private interest." ' The court refused her right to recover on her changed testimony."

It is the general rule in this jurisdiction that in a jury trial when the defendant moves for a directed verdict at the

close of plaintiff's evidence, such motion must be treated as an admission of the truth of all material and relevant evidence and all proper inferences to be drawn therefrom, and if the evidence so considered tends to sustain the allegations of the petition, and the petition states a cause of action, the case should be submitted to the jury. But this rule does not control where it appears that other evidence of the plaintiff demonstrates conclusively, or to a degree that the minds of reasonable men cannot differ thereon, that such evidence favorable to plaintiff is incapable of belief.

Plaintiff called Lloyd Baier, the driver of the other car involved in the accident, to testify in her behalf. He testified that he was proceeding west on a highway which was a continuation of Pacific street. He had been over the road many times before and was acquainted with conditions as they existed at the intersection where the accident occurred. The road from the east slopes down to Highway No. 31. The view to the north is obstructed by a bank until one reaches a point 25 to 30 feet east of the east line of the intersection. There was a stop sign on Pacific street and a warning sign approximately 600 feet east of the intersection. The witness Baier was familiar with the location of these signs prior to the day of the accident. He says he came up to the first warning sign at a speed of 35 or 40 miles an hour, that he then slacked his speed as he proceeded down the slope to Highway No. 31. He says he shifted gears at the stop sign and proceeded across Highway No. 31, but was unable to estimate the speed at which he proceeded. He does not testify that he stopped at the stop sign. He says he saw the car approaching from the north about a block away at the time he drove into the intersection. This evidence standing alone is insufficient to establish gross negligence in a suit by a guest in the approaching car against the host. We think the evidence tends to show that the witness Baier drove his car into the intersection without heeding the highway signs erected for his protection. Such evidence, standing alone, has no probative value in es-

tablishing the claim of the plaintiff against the owner or operator of the automobile approaching from the north.

We conclude therefore that as the host's automobile was being driven on a protected highway on the proper side of the road at a lawful rate of speed, and there being no credible evidence of any acts constituting gross negligence on the part of the owner of the car, the trial court properly directed a verdict for the defendants.

AFFIRMED.

WENKE, J., participating on briefs.