JACK MANTZ, APPELLANT, V. CONTINENTAL WESTERN INSURANCE
COMPANY, A MEMBER OF ARMCO INSURANCE GROUP, APPELLEE.

422 N.W.2d 797

Filed May 6, 1988.    No. 87-659.

## I

William J. Elder of McCormack, Cooney, Mooney & Hillman, for appellant.

Alan L. Plessman, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Plaintiff-appellant, Jack Mantz, was injured when an uninsured station wagon knocked him to the pavement and again when a hit-and-run Datsun ran over one or both of his legs while Mantz was lying on the street. The accidents occurred on 13th Street in Omaha on November 9, 1984.

Mantz sued his own insurance carrier, the defendant-appellee, Continental Western Insurance Company, for damages resulting from each accident. The suit was brought under the uninsured motorist clause of Mantz' insurance policy. After Mantz presented evidence before a jury and rested, a verdict was directed in favor of the defendant, Continental, in regard to both accidents. Mantz appeals. We affirm the trial court's directed verdict as to the station wagon accident, reverse it as to the Datsun accident, and remand the cause with directions.

Mantz' petition claims that the station wagon driver and the Datsun hit-and-run driver each negligently failed to keep a proper lookout, failed to have reasonable control of her/his respective vehicle, failed to yield the right-of-way to the plaintiff, and negligently operated her/his respective vehicle at a speed in excess of that which was reasonable and prudent under the conditions existing at the time of the accidents. Mantz further claims that the station wagon driver placed him in a position of peril whereby Mantz suffered additional injuries. Finally, Mantz claims that the station wagon driver was negligent in failing to extricate him from the position of peril in which she placed him, thereby contributing to his injuries.

In its amended answer, Continental claims that Mantz was

contributorily negligent in failing to maintain a proper lookout and in failing to yield the right-of-way to the vehicles involved; that Mantz suddenly left a curb or other place of safety and walked or ran into the path of the station wagon, which was so close that it was impossible for the driver to stop; and, finally, that Mantz assumed the risk of injury and damage.

The operable facts in this case reflect that after working all day on Friday, November 9, 1984, Mantz cashed his paycheck and went to the Ball Park Bar. He arrived at the tavern around 7 p.m. and drank eight or nine bottles of beer and a "shot" of whiskey during a $3^{1}/_{2}$-hour period.

Mantz left the tavern about 10:30 p.m. Once outside the tavern, he noticed that it was raining, sleeting, and snowing simultaneously. Mantz waited for a while in a protected area just outside the tavern door. His vehicle was parked across the street at a service station on the east side of 13th Street. Thirteenth Street runs north and south and has two lanes each for northbound and southbound vehicular traffic. Mantz said he saw three or four cars 200 to 225 feet to the south in the northbound lanes of traffic. Looking north, Mantz saw two southbound cars 300 to 325 feet away. The plaintiff testified he wanted to go east across 13th Street to his vehicle. He decided he could run safely across the southbound lanes to the center of the street. Mantz said that with his head down, while looking to the side, he ran as "[f]ast as I could" to the center of the street and that while he was standing there, a northbound car passed him. He further testified that while he was standing on the centerline of the street he was bumped from behind by a southbound station wagon. There was testimony that Mantz was in the southbound lane when the lady driver in the station wagon honked at him. There was evidence that the station wagon did not swerve after hitting Mantz. It stopped in its own southbound lane about 2 or 3 feet in front of where Mantz lay.

The station wagon's emergency flashers were turned on, as were the flashers of a southbound car that had stopped just north of the station wagon. A third southbound vehicle had also stopped near the west curb in the vicinity of where Mantz was lying. Paul Munkel, a passenger in that vehicle, went to where Mantz lay on the pavement. Munkel put his own jacket

over the injured man and began directing traffic. A girl came from the tavern and put her jacket over Mantz. People from the service station also arrived at the scene. A small crowd gathered in the area of the injured plaintiff.

While Munkel was directing traffic, he noticed a northbound Datsun automobile coming toward him and the injured Mantz. This vehicle was in the lane closest to the centerline. At this time, only Mantz' legs were protruding into the northbound lane of traffic, Munkel testified. Munkel tried to flag the Datsun in an effort to divert it east, away from Mantz and away from the centerline of the street. The Datsun, bearing a No. 59 county Nebraska license plate, did not vary its course. It "just [came] straight forward." Munkel had been "right where the man was [lying]." Munkel was required to jump out of the Datsun's path to keep from being hit. The evidence reflects that the Datsun ran over one or both of Mantz' legs and proceeded northbound without stopping. Although Munkel could clearly see the profile of the Datsun's male driver, he could not identify him, nor could Munkel see the remaining numbers of the vehicle's license plate.

Mantz' policy of insurance with Continental clearly covered hit-and-run accidents. Part C, "Uninsured Motorists Coverage," specifically defines an "uninsured motor vehicle" as one "which is a hit and run vehicle whose operator or owner cannot be identified and which hits" the insured. The station wagon driver was uninsured because her insurance carrier had become insolvent.

We now examine whether the trial court properly directed a verdict against the plaintiff in each accident involved here. When Mantz rested after adducing evidence in his case in chief, the defendant moved for a directed verdict in its favor in regard to each accident for two reasons: (1) that the plaintiff failed to establish a prima facie case and (2) that the evidence established as a matter of law that Mantz was contributorily negligent to a degree sufficient to preclude any recovery.

In reviewing a directed verdict, the party against whom a motion for a direction of liability is made is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn

from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Kahrhoff v. Kohl*, 219 Neb. 742, 366 N.W.2d 128 (1985). See, also, *Tiede v. Loup Power Dist.*, 226 Neb. 295, 411 N.W.2d 312 (1987).

A directed verdict is proper only where reasonable minds cannot differ and can only draw one conclusion from the evidence. *Vice v. Darm Corp.*, 224 Neb. 1, 395 N.W.2d 524 (1986); *Lambelet v. Novak*, 225 Neb. 229, 404 N.W.2d 28 (1987). Where reasonable minds may draw different conclusions from the evidence, the question of negligence is for determination by the jury. *Bourke v. Watts*, 223 Neb. 511, 391 N.W.2d 552 (1986); *Cullinane v. Interstate Iron & Metal*, 216 Neb. 245, 343 N.W.2d 725 (1984).

The trial court was correct in directing a verdict against Mantz insofar as the accident with the station wagon was concerned. Based upon the evidence, reasonable minds cannot differ but that Mantz was contributorily negligent in a degree sufficient to bar recovery in the accident involving the station wagon. Mantz, by his own testimony, on a dark, rainy, sleety, and snowy November night, ran as fast as he could across a busy street's southbound vehicular traffic lanes. That night, Mantz admittedly knew that traffic was heavier than normal. He saw the headlights of oncoming cars, but proceeded to cross the southbound lanes anyway. By his own testimony, Mantz ran with his head down, although he looked to the side. He was oblivious to the sound of the station wagon's horn, which was honking while Mantz was transversing the west half of 13th Street. Driving conditions were slippery when Mantz ran. There was no evidence that the station wagon was speeding or that the driver did not have control of her vehicle. It hit the plaintiff, but stopped a few feet after the impact. While there was evidence that the impact between Mantz and the station wagon occurred near an intersection, there is no evidence in the record it occurred in a crosswalk. When he began to run as fast as he could, Mantz suddenly left a place of safety and ran across the path of the station wagon. He failed to yield the right-of-way to the station wagon. When a pedestrian in a place of safety sees or could have seen the approach of a moving vehicle in close

proximity to him or her and suddenly moves from the place of safety into the path of such vehicle and is struck, such conduct constitutes contributory negligence more than slight as a matter of law and precludes recovery. *Hennings v. Schufeldt*, 222 Neb. 416, 384 N.W.2d 274 (1986); *Gerhardt v. McChesney*, 210 Neb. 351, 314 N.W.2d 258 (1982).

The trial court properly directed a verdict against the plaintiff in the accident involving the station wagon. We need not discuss further whether the plaintiff presented a prima facie case.

In regard to the second accident involving the Datsun, the trial court, at the close of the plaintiff's evidence, erroneously directed a verdict in favor of the defendant.

As the Datsun approached the accident scene from the south, Mantz lay on the pavement with his legs extending into a northbound traffic lane. Mantz was dazed and startled, and there was evidence that he may have been unconscious after the collision with the station wagon.

How long Mantz lay on the pavement before being hit by the hit-and-run Datsun is not specified in the record. However, it was of such duration that a northbound car could pass by; that the station wagon driver had time to stop her vehicle, turn on flasher lights, get out of her vehicle, and talk to Mantz; that the witness Munkel could leave his vehicle, walk to where Mantz lay, put his jacket over the plaintiff, and begin directing traffic; that a girl could walk from the tavern and put her jacket over the plaintiff; that two people from the service station could walk to the scene where Mantz was first hit; and that a group of people could congregate at the accident site. Although the record does not disclose the volume of traffic he directed, Munkel had been directing traffic when Mantz was struck by the Datsun. While some of these acts may have occurred simultaneously, it is apparent that a period of time elapsed between the time Mantz was knocked to the pavement by the station wagon and the time he was hit by the Datsun. If a sufficient period of time elapsed, Mantz' position on the pavement might well have created only a condition. If plaintiff's position merely created a condition, Mantz may not have been actively contributorily negligent. *C.S. v. Sophir*, 220

Neb. 51, 368 N.W.2d 444 (1985); *Steenbock v. Omaha Country Club*, 110 Neb. 794, 195 N.W. 117 (1923).

In regard to lookout, Munkel testified that there was nothing between him and the Datsun that obscured his own vision of the driver. From that testimony, a jury could infer that if Munkel could see the Datsun driver, the driver could see Munkel.

The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right-of-way. He must keep a lookout ahead or in the direction of travel, and he is bound to take notice of the road, to observe the conditions along the way, and to know what is in front of him for a reasonable distance. *Hilferty v. Mickels*, 171 Neb. 246, 106 N.W.2d 40 (1960), cited with approval in *Prime Inc. v. Younglove Constr. Co.*, 227 Neb. 423, 418 N.W.2d 539 (1988). The "range of vision" rule is applicable, notwithstanding that a motorist's vision is impaired by atmospheric or weather conditions, such as falling or blowing snow, rain, mist, or fog. *Prime Inc. v. Younglove Constr. Co., supra*; *C. C. Natvig's Sons, Inc. v. Summers*, 198 Neb. 741, 255 N.W.2d 272 (1977); *Vrba v. Kelly*, 198 Neb. 723, 255 N.W.2d 269 (1977).

Moreover, a driver ordinarily has a duty to drive an automobile on a public street at night in such a manner that he can stop in time to avoid a collision with an object within the area lighted by his headlights, and the driver is negligent if he fails to do so. A motorist is not, however, negligent where the object cannot be observed by the exercise of ordinary care in time to avoid a collision. *Greenwade v. Drake*, 202 Neb. 815, 277 N.W.2d 248 (1979); *Fink v. Meister*, 188 Neb. 248, 196 N.W.2d 122 (1972).

Whether the hit-and-run Datsun driver in this case failed to keep a proper lookout was a question of fact which should have been submitted to the jury for resolution.

We now consider Mantz' excessive speed allegation against the Datsun driver. Neb. Rev. Stat. § 39-662 (Reissue 1984) provides:

> No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential

hazards then existing. Any person shall drive at a safe and appropriate speed when . . . special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

There was direct evidence that special hazards existed as the Datsun driver approached the accident scene. It was raining, sleeting, and snowing simultaneously. Driving conditions were slippery. People were congregated in the street. One of them lay with his legs protruding into the Datsun's line of travel. Another was standing in the hit-and-run vehicle's path. There were two vehicles with emergency flasher lights in operation at the scene. A jury could conclude that under those conditions any vehicle's speed greater than a very slow speed would not be reasonable nor prudent as required by § 39-662.

The question of whether the Datsun was traveling at an excessive speed for the conditions existing at the time of the accident with Mantz should have been submitted to the jury.

In operating a motor vehicle upon a public street, a driver has a duty to have his vehicle under such reasonable control as will at all times enable him to avoid a collision or accident, assuming that other drivers or people upon the highway are also exercising ordinary care. "Reasonable control" requires motor vehicle drivers to take into consideration such factors as the speed of their automobiles, the condition of the highway upon which they are traveling, the traffic involved, and any other factors affecting driving conditions that may have been developed by the evidence. See, *Prime Inc. v. Younglove Constr. Co., supra*; *Bartosh v. Schlautman*, 181 Neb. 130, 147 N.W.2d 492 (1966).

Whether the Datsun driver had reasonable control of his vehicle under all the facts of this case and whether he could have avoided running his vehicle over the plaintiff are questions which should have been submitted to the jury for resolution.

It is not necessary for a plaintiff to prove his case solely by direct evidence. A plaintiff may rely partially upon circumstantial evidence to support his position. *Ditloff v. State Farm Fire & Cas. Co.*, 225 Neb. 375, 406 N.W.2d 101 (1987), quoting *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 360 N.W.2d 488 (1985), quoting *Popken v. Farmers Mutual Home*

*Ins. Co.*, 180 Neb. 250, 142 N.W.2d 309 (1966).

Mantz, by direct and circumstantial evidence, established a prima facie case of negligence against the driver of the hit-and-run Datsun. That portion of Mantz' case should have been submitted to the jury. The trial court's decision not to submit the hit-and-run accident to the jury is reversed, and that portion of the cause is remanded to the district court for a new trial.

The trial court's directed verdict in regard to the accident involving the station wagon is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.