JACK E. CONVERSE, APPELLEE, V. JEREMY P. MORSE, BY HIS FATHER AND NEXT FRIEND, QUENTIN MORSE, APPELLANT.
442 N.W.2d 872

Filed July 21, 1989. No. 87-945.

John F. Simmons, of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellant.

Harry R. Meister, of Meister & Segrist, and James M. Mathis, of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and McGINN, D.J.

HASTINGS, C.J.

The plaintiff, Jack E. Converse, brought an action in the district court for Scotts Bluff County against the defendant, Jeremy P. Morse, by his father and next friend, Quentin Morse, to recover for personal injuries he sustained when his automobile hit the defendant's stalled car. The jury found for the plaintiff.

The defendant appeals, assigning as error the district court's failure to direct a verdict in his favor, the court's failure to sustain his motion for new trial, the court's failure to find that plaintiff's testimony was discredited as a matter of law, and the court's finding that the testimony of witnesses other than the plaintiff sufficiently sustained plaintiff's burden of proof.

On the evening of November 23, 1985, the defendant left home in his midnight-blue Pontiac Trans Am to visit a friend. The night was dark. The defendant drove south on the county road until he reached the intersection of the county road and the "Experiment Farm Road." He then proceeded to turn right, heading west on the Experiment Farm Road.

About halfway through his turn, the defendant's car stalled. He looked to the west, saw nothing, and then looked to the east. There is a hill which rises to the east of the intersection, and from that direction, the defendant could see an oncoming car. So that the oncoming westbound car would not collide with his stalled car, the defendant coasted his car into the eastbound lane. He parked his car facing west in the southernmost lane of the road, on a bridge. The road slopes downhill from the bridge to the west.

The oncoming westbound vehicle, owned by Rick and Sandra Schwartzkopf, passed the defendant's car safely. Rick Schwartzkopf testified that he sped up to pass the defendant's

car so that he would not be on the bridge at the same time as a car that he saw approaching from the west. Approximately 3 seconds after he passed the defendant's vehicle, Rick Schwartzkopf passed the oncoming car, which was driven by the plaintiff.

The defendant testified that after the Schwartzkopfs passed him, he turned off his headlights to aid him in restarting his car. However, Rick Schwartzkopf testified that the defendant's lights were not on and that it took him a few seconds after he first saw something on the bridge to realize that it was a car. Sandra Schwartzkopf testified that she did not know it was a car until the defendant tapped his brake lights about 2 seconds before they passed him.

While attempting to restart his car, the defendant noticed the headlights of the plaintiff's car, which was heading east toward him. The defendant continued trying to start his car until the oncoming car was 300 to 400 feet from him, at which point he turned on his headlights and braced himself for a collision. The Schwartzkopfs, who witnessed the accident in the rearview mirror and through the back window of their car, testified that the defendant turned his lights on about 2 seconds before the collision. The plaintiff's car hit the defendant's car head on, injuring the plaintiff.

At trial, the plaintiff testified that as he turned onto Experiment Farm Road, from the east he noticed the glow from the Schwartzkopfs' headlights coming over the hill. The plaintiff testified that as he met the Schwartzkopfs' oncoming car, he was blinded by its headlights. A "second or so" after passing the Schwartzkopfs, "another set of headlights appeared out of nowhere right smack in front of" him, and before he could apply the brakes, he hit the defendant's car. He stated that because he was blinded by the Schwartzkopfs' oncoming car, he was unable to see the defendant's car in time to avoid a collision.

However, at the plaintiff's deposition taken approximately 6 months before trial, he stated that he met the Schwartzkopfs' car as he turned onto Experiment Farm Road at the *bottom* of the hill, not *on* the hill. Also at his deposition, the plaintiff testified that the reason he was not able to see the defendant's

car was that he was coming up an incline.

Because the plaintiff changed his testimony between the deposition and trial as to the location of the Schwartzkopf car when he passed it, thereby introducing for the first time at trial the excuse that he had been blinded by the Schwartzkopfs' headlights, the defendant contends that the plaintiff's testimony should have been discredited as a matter of law.

This court first adopted the rule whereby a party's testimony at trial may be disregarded if the testimony is inconsistent with testimony given at an earlier judicial proceeding in *Ellis v. Omaha Cold Storage Co.*, 122 Neb. 567, 240 N.W. 760 (1932). The court has continued to apply the rule since that time and has delineated the factors that must be present before the rule will be applied.

In *Insurance Co. of North America v. Omaha Paper Stock, Inc.*, 189 Neb. 232, 202 N.W.2d 188 (1972), quoting from *Clark v. Smith*, 181 Neb. 461, 149 N.W.2d 425 (1967), the rule was stated thus: " 'Where a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded.' " 189 Neb. at 234-35, 202 N.W.2d at 190.

The rule was also given in *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981), wherein the defendant was unable to reconcile his deposition testimony with his testimony at trial. The court noted that there is theoretically no difference between the use of deposition testimony and the use of testimony from prior related litigation, and therefore the rule providing for discrediting of a party's changed testimony applies equally in both situations. The court then set forth the factors mandating that the conflicting testimony be disregarded. "The important considerations are that the testimony pertains to a vital point, that it is clearly apparent the party has made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony." *Id.* at 55, 313 N.W.2d at 213.

For examples of other applications of this rule to plaintiffs, see, *Peterson v. Omaha & C. B. Street R. Co.*, 134 Neb. 322,

278 N.W. 561 (1938) (plaintiff changed her testimony at her second trial after a weakness in her case had been pointed out by this court's appellate opinion); *Gohlinghorst v. Ruess*, 146 Neb. 470, 20 N.W.2d 381 (1945) (plaintiff, to benefit her own case, gave a different version of events at trial from what she had previously testified to at deposition); *Rahfeldt v. Swanson*, 155 Neb. 482, 491, 52 N.W.2d 261, 266 (1952) (workers' compensation claimant gave three different accounts of his injury, prompting this court to state, "Conduct of this kind merits neither toleration nor reward"); and *Kokes v. Shafer*, 215 Neb. 470, 473, 339 N.W.2d 292, 294 (1983) (workers' compensation claimant shifted position "to meet the exigencies of the matter then at issue"). For cases applying the rule to witnesses generally, see, *Sacca v. Marshall*, 180 Neb. 855, 146 N.W.2d 375 (1966); *Kluender v. Mattea*, 214 Neb. 327, 334 N.W.2d 416 (1983); and *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986).

Other cases stand for the proposition that the conflicting testimony need not be discredited, but merely presents a question of credibility for the jury to determine. The basis for these decisions is that the factors delineated in *Momsen v. Nebraska Methodist Hospital, supra*, are not applicable. As explained in *Momsen*, quoting *Kirchner v. Gast*, 169 Neb. 404, 100 N.W.2d 65 (1959),

> "Those cases where we have held the statements to be judicial admissions have been where it is patent that the witness deliberately changed his testimony to meet the necessities of the case, and where the change has been unexplained, or is unexplainable on any rational basis. We have then held it to be a matter of law, but otherwise it is a question of credibility for the trier of facts."

210 Neb. at 53, 313 N.W.2d at 212-13.

In *Kipf v. Bitner*, 150 Neb. 155, 33 N.W.2d 518 (1948), the plaintiff testified in his pretrial deposition about the respective locations of the defendant's and his cars prior to their collision. At trial, the plaintiff gave differing testimony as to the locations of the cars when the plaintiff first saw the defendant. The defendant contended that the inconsistency precluded plaintiff from any recovery. However, this court held that those cases in

which the changed testimony was discredited were distinguishable on fact and law; while the plaintiffs in those cases changed their testimony to benefit themselves, the court found that the plaintiff in the case before it had no such motive. As the issues presented were for the jury, whose decision was supported by the evidence, the court affirmed the judgment for the plaintiff.

See, also, *Armer v. Omaha & Council Bluffs St. Ry. Co.*, 153 Neb. 352, 44 N.W.2d 640 (1950), wherein the court held that where the witness' description of the accident was not changed to meet the exigencies of the case, it was for the jury to weigh the impeaching effect of the change. The court also noted that, in any event, the plaintiff's version of the events which she gave at trial was corroborated by the other evidence, providing an adequate basis for the jury's finding.

The court in *Dorn v. Sturges*, 157 Neb. 491, 59 N.W.2d 751 (1953), held that the distinction made in *Kipf v. Bitner, supra*, was appropriate to the facts therein; that is, as the prior statement was not made to meet the exigencies of the present case, its effect was a matter for the jury to assess. "Such statements are . . . not conclusive but may be explained, rebutted, or contradicted, and thereafter are to be given such weight as the trier of the facts deems them entitled." 157 Neb. at 504, 59 N.W.2d at 759.

This proposition was repeated in *Kirchner v. Gast, supra*, wherein the plaintiff's deposition testimony and trial testimony differed as to preaccident speed, the length of skid marks, and the use of brakes. The court held that such testimony presented a question of credibility for the jury.

In *Kluender v. Mattea*, 214 Neb. 327, 334 N.W.2d 416 (1983), the witness explained the difference in his testimony regarding the degree of twist in the cross-shaft after certain tests had been performed on it by stating that he had merely been "eyeballing" the shaft and that he had never accurately measured it. The court held that as the witness had offered a rational or sufficient explanation for the change in his testimony, there was no need for the exclusion of his testimony under the rule announced in *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981).

In the present case, in spite of defense counsel's insistence that the plaintiff changed his testimony when he realized his earlier version "just wasn't going to cut it," it is not clearly apparent that the plaintiff's testimony was changed because the necessities of his case demanded it, nor is it true that the plaintiff had no rational explanation for the change.

When asked why he had changed his version of where the Schwartzkopfs' car was when he passed it, the plaintiff's explanation was that after the deposition he realized he could not accurately gauge the location where he had met the Schwartzkopfs' car and that he simply made a mistake when he said the Schwartzkopfs' car was at the bottom of the hill. His explanation for not previously mentioning being blinded by the lights was that no one at the deposition had asked him that question, and it had not occurred to him. Although the defendant contends that the plaintiff changed his story so that it would correspond to the Schwartzkopfs' testimony, the plaintiff notified his counsel of the change the day after his deposition, long before the Schwartzkopfs testified at trial.

Furthermore, the plaintiff's testimony at trial was substantiated by the testimony of other witnesses. Rick Schwartzkopf testified that approximately 3 seconds after he passed the defendant's vehicle, he passed the plaintiff's car. He and his wife testified that the defendant turned his lights on about 2 seconds before the collision. The plaintiff testified that a "second or so" after passing the Schwartzkopfs, the defendant's headlights appeared in front of him, and he instantly hit the defendant's car. Thus, the plaintiff's testimony is corroborated by the testimony of the Schwartzkopfs, and even if the plaintiff's testimony were disregarded, sufficient evidence still exists which would justify a conclusion that the plaintiff passed the Schwartzkopfs' car just a few seconds before hitting the defendant and could very well have been blinded by the Schwartzkopfs' headlights.

The defendant next contends that even if he were negligent as a matter of law, the plaintiff's violation of the "range of vision" rule constituted contributory negligence sufficient to bar his recovery.

In *Mantz v. Continental Western Ins. Co.*, 228 Neb. 447, 422

N.W.2d 797 (1988), this court explained a driver's duty:

> The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right-of-way. He must keep a lookout ahead or in the direction of travel, and he is bound to take notice of the road, to observe the conditions along the way, and to know what is in front of him for a reasonable distance.

*Id.* at 453, 422 N.W.2d at 802, citing *Prime Inc. v. Younglove Constr. Co.*, 227 Neb. 423, 418 N.W.2d 539 (1988), and *Hilferty v. Mickels*, 171 Neb. 246, 106 N.W.2d 40 (1960). Furthermore, the court specified the duty of a driver driving at night:

> Moreover, a driver ordinarily has a duty to drive an automobile on a public street at night in such a manner that he can stop in time to avoid a collision with an object within the area lighted by his headlights, and the driver is negligent if he fails to do so.

228 Neb. at 453, 422 N.W.2d at 802. But the court qualified this rule, stating, "A motorist is not, however, negligent where the object cannot be observed by the exercise of ordinary care in time to avoid a collision." *Id.*

In *Prime Inc. v. Younglove Constr. Co., supra*, the court stated the range of vision rule:

> Generally, it is negligence as a matter of law if one operates a motor vehicle on a public street or highway and, on account of the manner of operation, is unable to stop such operator's vehicle or turn that vehicle aside without colliding with an object or obstruction on the street or highway within the operator's range of vision.

*Id.* at 430, 418 N.W.2d at 544. The court then stated an exception to the rule, which we find applicable to the present case:

> An exception to or exoneration from the range of vision rule exists when a motorist, otherwise exercising reasonable care, does not see an object or obstruction sufficiently in advance to avoid colliding with that object or obstruction, which is relatively indiscernible on account of its color similar to the street or highway and thereby is rendered indistinguishable from the surface.

*Id.*

A case similar to the present one is *Monasmith v. Cosden Oil Co.*, 124 Neb. 327, 246 N.W. 623 (1933). In *Monasmith*, the defendant, having tire trouble, stopped his car on the traveled portion of the highway. Although it was dark out, he did not turn on his lights. The plaintiff, who was traveling in the same lane, discovered the defendant's car too late to avoid hitting it.

The court first determined that the defendant was negligent: "Leaving an unlighted vehicle on [a] highway, on [a] dark night, without any warning, constitutes gross negligence, within the comparative negligence statute." *Id.* at 329, 246 N.W. at 624. The court then undertook to decide whether the plaintiff was guilty of contributory negligence more than slight. The court noted that the defendant's car was "dusty and nearly the color of the graveled road" and that there was no evidence that the plaintiff was speeding or that his brakes or headlights were not in working order. *Id.* at 328, 246 N.W. at 624. The court stated the applicable rule:

> Where an object on a highway in front of one driving thereon at night is so nearly the color of the road that it may be difficult to distinguish it until quite close, it cannot be said, as a matter of law, that such person was guilty of more than slight negligence in his failure to see it in time to stop his car or to prevent running against it.

*Id.* at 330, 246 N.W. at 624. The court held that under the circumstances of the case, the question of contributory negligence was for the jury.

In *Haight v. Nelson*, 157 Neb. 341, 59 N.W.2d 576 (1953), the plaintiff hit the defendant's car, which, due to mechanical failure, was parked on a traveled portion of the highway. The car's color blended with the color of the road surface, and the car had no lights on. The court set forth the range of vision rule, and then in applying the rule, commented on conditions (which are present in our case) which may enter into the determination of negligence.

> "The existence or presence of . . . blinding headlights, or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of

automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances." . . .

. . . .

". . . [W]e have made exceptions to [the range of vision] rule when the nature of the object or its condition, such as color, dirt, et cetera, in relation to the highway or road, affected its immediate visibility or when, because of the lights of oncoming traffic, the driver's attention is distracted or his vision impaired and his opportunity for immediate discernment thereby affected. . . ."

*Id*. at 344-46, 59 N.W.2d at 579-80, quoting in part from *Buresh v. George*, 149 Neb. 340, 31 N.W.2d 106 (1948).

In *Bartosh v. Schlautman*, 181 Neb. 130, 147 N.W.2d 492 (1966), the court held that where an exception to the range of vision rule applies, the general range of vision rule does not apply, and the determination of negligence becomes a question for the jury. In *Bartosh*, the court held that the exceptions to the rule involving visibility of the object clearly applied to the facts: the highway and the back of the stalled vehicle were a similar color; there were no lights on the stalled vehicle; and two witnesses who also approached the stalled vehicle from behind stated that they could not make out the vehicle until they were extremely close to it, even though they had their headlights on.

In *McClellen v. Dobberstein*, 189 Neb. 669, 204 N.W.2d 559 (1973), the defendants' driver abandoned his garbage truck in the roadway, heading north, when it ran out of gas. No lights or warnings were on the truck. A patrolman investigating the abandoned truck parked his cruiser on the opposite side of the road, heading south, with its headlights on. The northbound plaintiff testified that he did not realize the car with the headlights on was stationary until he was about four blocks from it; that the lights blinded him, and he looked to the right side of the road to avoid looking at the headlights; and that he never saw the parked truck on the right side of the road. The court held that the issues were properly submitted to the jury because the facts brought the case within exceptions to the range of vision rule—specifically, the exception "where the object . . . is of the same color as the roadway, and for that

reason, or for other sufficient reasons, cannot be observed by the exercise of ordinary care in time to avoid a collision." *Id.* at 674, 204 N.W.2d at 563. The defendants argued that because of the plaintiff's conduct when faced with the situation, the exception did not apply, but the court held that the plaintiff's conduct and credibility presented circumstances from which the jury was entitled to form a judgment as to whether the plaintiff was contributorily negligent.

From the record in the present case, the inference can be drawn that at least from the time the plaintiff turned onto the Experiment Farm Road until a second or two before the accident, the defendant's headlights were not on, nor were there any emergency flashers or other means of warning other motorists. The only other witnesses present that evening, the Schwartzkopfs, both testified that they had difficulty seeing the defendant's vehicle. Rick Schwartzkopf testified that it took approximately 3 seconds after he came over the hill (with his halogen headlights on the bright setting) to ascertain that there was a car on the bridge, and his wife testified that it was not until the defendant tapped his brake lights, about 2 seconds before the Schwartzkopfs passed him, that she realized there was a vehicle on the bridge. Rick Schwartzkopf testified that he had trouble seeing the defendant's "black or real dark blue" car because "[i]t was a dark night and dark highway and it was just hard to see." He stated that the color of the defendant's car and the color of the road on which it was parked were "similar, they were both dark." Sandra Schwartzkopf testified that the car, roadway, and sky all appeared black to her. She also stated that "[t]he darkness blended together so if it would've been a white car it would have been much easier to see."

The evidence in the record regarding the difficulty of seeing the defendant's car against the dark road and sky, as well as the evidence that the plaintiff was blinded by the Schwartzkopfs' headlights, was sufficient to bring the case within an exception to the range of vision rule. The defendant's argument that the plaintiff's violation of the range of vision rule barred his recovery as a matter of law is without merit.

It is well settled in this jurisdiction that with regard to the overruling of a motion for directed verdict made at the close of

all the evidence, our review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can only draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989).

A motion for new trial is addressed to the discretion of the trial court. In the absence of an abuse of discretion, a trial court's disposition of a motion for new trial will be upheld on appeal. *DeCamp v. Lewis*, 231 Neb. 191, 435 N.W.2d 883 (1989).

The court did not err in failing to direct a verdict in the defendant's favor or in failing to sustain his motion for new trial. The record presented a question of fact for the jury. The judgment is affirmed.

AFFIRMED.