EUNICE BURKEY, APPELLANT, V. SANDRA K. ROYLE AND DONALD
H. ROYLE, APPELLEES.
446 N.W.2d 720

Filed October 13, 1989.  No. 87-983.

550

Graten D. Beavers, of Knapp, Mues, Beavers & Luther, for appellant.

Thomas W. Tye II, of Tye, Hopkins & Associates, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiff, Eunice Burkey, appeals the dismissal pursuant to verdict of the suit she brought because of a collision between an automobile in which she was a passenger and which was being driven by her husband, Roger Burkey, and an automobile coowned by defendant-appellee Donald H. Royle and his

daughter, defendant-appellee Sandra K. Royle, who was driving that automobile. Plaintiff seeks recovery in her own right for damages she sustained as a consequence of injuries she suffered and for damages her husband incurred and assigned to her. Among plaintiff's assignments of error is the claim that the trial court erroneously and prejudicially refused to instruct the jury, as plaintiff requested, that Royle was negligent and that such negligence proximately caused the collision. Finding merit in that assignment of error, we reverse the judgment of the trial court and remand the cause for a new trial solely on the issue of damages.

The collision occurred in Kearney, Nebraska, at the intersection of 39th Street, an east-west street, and Second Avenue, a north-south street. Second Avenue consists of four traffic lanes, two in either direction, and at the intersection with 39th Street is augmented by left turn lanes for southbound and northbound traffic. At the location of the collision, the two northbound lanes are separated from the southbound lanes by a median.

A grocery store parking lot is located at the northwest corner of the intersection, with two exits onto Second Avenue. The southernmost of these exits is 160 feet from the intersection, and the northernmost exit is 300 feet from the intersection. An automobile dealership is located north of the grocery store parking lot.

The weather was inclement on the day of the collision. According to Roger Burkey, "The roads were definitely getting a lot slicker and the further west we come, the worse it got." By the time the Burkeys reached Kearney, it was snowing—"all the streets were snow packed . . . and they were warning everybody to stay put . . . ." Plaintiff testified that the streets were covered with ice which in turn was blanketed with wet snow, making the streets "slippery and icy." Raul Vasquez, a police sergeant for the city of Kearney who investigated the collision, testified that at the place of the collision the streets were covered with snow and ice and that there was an accumulation of snow which was encroaching on the furthest west driving lane along the eastern side of the grocery store parking lot. However, according to Sandra Royle, it was sleeting, not snowing, at the time of the

collision. "There was a small amount of mist. The roads were starting to get icy as it got later on in the evening. However there wasn't that much snow. What snow there was was packed." "[I]t was more icy than snowy . . . ."

Just before the collision the Burkeys, who had been traveling south on Second Avenue, stopped in the center lane, or furthest left through-traffic lane, at the intersection of Second Avenue with 39th Street because the traffic light was red. Roger Burkey testified that the snow at the intersection was about 6 to 8 inches deep and covered the street markings, so that he could not see them. Because of this, he merely stopped in the tracks other vehicles had made in the snow. He stated, "[T]here was just one set of tracks. There was no lanes or you didn't know where you were at. You were just in the tracks. If you got out of the tracks you'd been stuck."

The parties disagree as to the circumstances of the collision. According to Roger Burkey:

We were sitting there waiting for the light to turn, and I happened to glance in the rear view mirror. I could see that there was a car coming right behind us further up the road and I happened to see that . . . the vehicle was coming at a pretty good speed. And the closer she come or the vehicle come, why I saw her hit the brakes because the car started to fishtailing and I knew that there was no way she was ever going to get stopped before they hit us. And just right before we got hit, why I threw my arm out. I told [plaintiff] we were going to get hit. If there probably wouldn't have been any vehicles going on 39th Street, I probably would have just drove out in the intersection, because I knew we were going to get smacked.

When Roger Burkey first saw the Royle vehicle, it was approximately at the northern exit of the grocery store parking lot.

Corresponding with Roger Burkey's version of the incident, Vasquez reported that after the collision, Royle told him that "she was southbound on Second Avenue approaching 39th and she couldn't get stopped due to the icy roadway and collided with a vehicle in front of her with the left front portion of her vehicle." Royle also told the officer that "she attempted to steer

to the right but for some reason couldn't." Vasquez testified similarly to Roger Burkey that because the streets were covered with ice and snow, the lane markings were not visible.

Royle's version of the collision is generally to the effect that she and her friends had left Kearney to travel to another town, but decided it was "too icy" and turned around to return to Kearney. When questioned by her attorney on direct examination, she stated:

> As I got to about [the automobile dealership], I could see that there was a red stop light. I could see the Burkey car in the center lane. I was still in the center lane until the first entrance into the [grocery store] parking lot. Sometime in between that entrance and the second entrance I realized that I probably wouldn't be able to stop behind their car. I thought it would be safer to get into the right-hand lane of traffic. There was nothing coming, so I did. I would have been able to stop and not go through the intersection. However, I hit something, I don't know for sure what. It was—it either had to be ice or a clump of snow which caused me to veer to the left, therefore striking the back end of their car.

She further testified that when she reached the northernmost entrance into the parking lot,

> I started tapping my brakes or pumping the brakes. I did feel like I had it under control although we did hit a little ice and again I thought I could probably stop behind the car. But to be safe, it was better to get into the other lane because I did start to slide. If I would not have hit whatever it was that was in the side of the road, I probably would have been able to stop beside them.

When questioned by plaintiff's attorney earlier, during plaintiff's case in chief, Royle stated that she changed lanes because the street began to get icy, and she realized she was not in control of her vehicle and would not be able to stop behind the Burkey vehicle.

Royle testified that she did not see the clump of ice or snow before she hit it. Royle also testified that she began slowing down when she saw the red light. Although she could not recall her exact speed, she was driving "extra cautious" and "slow"

because of the weather conditions, and she did not "fishtail." Royle also contradicted Roger Burkey's and Vasquez' testimony by testifying that she could tell where the lanes should be.

In general, Royle's version of the collision was confirmed by Dave Tietjen, a passenger in her automobile. He testified that she never "fishtailed." He also testified that when the Royle vehicle struck the chunk of ice or snow which caused it to veer left, it was probably traveling at 10 miles per hour, but could have been traveling 5 miles an hour faster or slower. He did state that he could see big chunks of ice and snow along the curb.

According to Royle, the Burkey vehicle was not directly in the center lane of traffic but, instead, impeded the right-hand lane of traffic "a little bit." While she stated that the Burkey vehicle "definitely" narrowed the right-hand lane, she could have gone around it on the right had she not hit the clump of ice or snow. Vasquez testified that after the collision, the position of the Burkey vehicle "seem[ed] to indicate . . . that it was encroaching on the west . . . driving lane." Tietjen stated that Royle's vehicle pushed the Burkey vehicle "a few feet" forward as a result of the collision.

Vasquez testified that when he arrived at the scene of the collision, the Burkey vehicle was in front of the Royle vehicle, both vehicles were facing south, and both were positioned in approximately the center lane. He estimated that the point of impact between the two vehicles was "about 20 feet north of the north curbline of 39th Street."

According to Vasquez, after the collision the front end of the Burkey vehicle was very close to the intersection. Plaintiff remembered that after the collision she was concerned that the front end of their automobile might be hit by 39th Street traffic. Both Royle and Tietjen contradicted the plaintiff, stating that after the collision the Burkey vehicle was not impeding 39th Street traffic.

It is a motorist's duty to use reasonable care to prevent a collision or injury from the operation of a motor vehicle, considering the conditions and circumstances existing on the public street or highway. *Prime Inc. v. Younglove Constr. Co.*, 227 Neb. 423, 418 N.W.2d 539 (1988). A motorist must keep a

proper lookout in the direction in which the motorist's vehicle is operated, take notice of conditions on the street or highway traveled, and know what is in front of her or him for a reasonable distance. See, *Converse v. Morse*, 232 Neb. 925, 442 N.W.2d 872 (1989); *Mantz v. Continental Western Ins. Co.*, 228 Neb. 447, 422 N.W.2d 797 (1988); *Prime Inc. v. Younglove Constr. Co., supra.*

To determine whether conduct constitutes negligence, the invariable standard is reasonable care, although reasonable care is directly proportional to the danger inherent in the conduct and may vary depending on the circumstances. *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 425 N.W.2d 872 (1988); *Prime Inc. v. Younglove Constr. Co., supra.*

Ordinarily, the question of the defendant's negligence is one of fact for the jury. *Schuster v. Baumfalk*, 229 Neb. 785, 429 N.W.2d 339 (1988). As plaintiff indicates, however, we have held that negligence generally arises as a matter of law if one operates a motor vehicle on a public street or highway and, on account of the manner of operation, is unable to stop her or his vehicle or turn it aside without colliding with an object or obstruction on the street or highway within the operator's range of vision. *Converse v. Morse, supra*; *Kasper v. Carlson*, 232 Neb. 170, 440 N.W.2d 195 (1989); *Prime Inc. v. Younglove Constr. Co., supra.* The range of vision rule is applicable, notwithstanding that a motorist's vision is impaired by atmospheric or weather conditions, such as falling or blowing snow, rain, mist, or fog, *Mantz v. Continental Western Ins. Co., supra*, and *Prime Inc. v. Younglove Constr. Co., supra*, and notwithstanding that a motorist's ability to maneuver the vehicle is impaired by the presence of ice or snow upon the road surface. See, *Vrba v. Kelly*, 198 Neb. 723, 255 N.W.2d 269 (1977); *Newkirk v. Kovanda*, 184 Neb. 127, 165 N.W.2d 576 (1969); *Kuffel v. Kuncl*, 181 Neb. 770, 150 N.W.2d 908 (1967).

An exception to or exoneration from the range of vision rule exists when a motorist, otherwise exercising reasonable care, does not see an object or obstruction sufficiently in advance to avoid colliding with it because it is similar in color to the road surface and is thus relatively indiscernible. See, *Converse v.*

*Morse, supra; Prime Inc. v. Younglove Constr. Co., supra.*

Therefore, the question resolves itself into whether Royle operated her vehicle in such a manner that she was unable to stop it or turn it aside without colliding with the Burkey automobile, an object on the street within her range of vision, and thus was negligent as a matter of law notwithstanding that her ability to control her vehicle may have been impaired by the presence of ice or snow on the street.

We have said that if the presence of ice or snow upon the road surface is known or should have reasonably been anticipated, the snow and ice are considered conditions rather than intervening causes and thus do not exonerate a motorist from the application of the range of vision rule. See, *Vrba v. Kelly, supra; Newkirk v. Kovanda, supra; Kuffel v. Kuncl, supra.*

There is nothing in the evidence which excuses Royle from being aware of the conditions and circumstances under which she was driving and from knowing of the presence of the snow or ice she encountered. Accordingly, the trial court erred in failing to instruct the jury as plaintiff requested.

REVERSED AND REMANDED FOR A NEW TRIAL ON THE ISSUE OF DAMAGES.