STATE OF NEBRASKA, APPELLEE, V. TWO IGT VIDEO POKER
GAMES, MODEL FA180, ET AL., APPELLEES, SCHMIT INDUSTRIES,
INC., APPELLANT.

465 N.W.2d 453

Filed February 1, 1991.    No. 88-885.

John H. Albin, of DeCamp Legal Services, P.C., and Clarence E. Mock, of Johnson and Mock, for appellant.

Robert M. Spire, Attorney General, and William L. Howland, and Michael G. Heavican, Lancaster County Attorney, and John A. Colborn for appellee State.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

This is an appeal from a judgment forfeiting the defendant-appellee IGT Video Poker Game, Model FA180, machines owned by defendant-appellant, Schmit Industries, Inc., to plaintiff-appellee, State of Nebraska.

We begin by noting that actions for forfeiture are generally considered to sound in equity. See, e.g., *In re Forfeiture of $30,632.41*, 184 Mich. App. 677, 459 N.W.2d 99 (1990); *Sturm v. Crowley*, 131 W. Va. 505, 48 S.E.2d 350 (1948); *Robinson Cadillac Motor Car Co. v. Ratekin*, 104 Neb. 369, 177 N.W. 337 (1920). This therefore being an equitable action in rem to transfer the title of the allegedly unlawful machines from the owner to the State, see Neb. Rev. Stat. § 28-1111 (Reissue 1989), we apply the usual rule that this court reviews equity actions de novo on the record and will reach its own conclusion independent of the findings of the trial court; provided, however, where credible evidence is in conflict on a material issue of fact, we will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. *Kracl v. Loseke*, 236 Neb. 290, 461 N.W.2d 67 (1990); *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990); Neb. Rev. Stat. § 25-1925 (Reissue 1989).

Schmit Industries has assigned 19 errors, which combine to claim that (1) the statutes upon which the forfeitures are based violate various provisions of the federal and state Constitutions, and (2) the district court erred in concluding that the machines were gambling devices possessed in violation of Neb. Rev. Stat. § 28-1107 (Reissue 1989).

This case was submitted to the district court on stipulated

facts, which reveal that in exchange for a 25-cent payment, the machines grant the player five simulated poker hand replay credits. The player can wager one to eight replay credits per hand played, and the machines will award replay credits if the player obtains a winning hand. The machines are equipped with meters which make a permanent record of the number of replay credits awarded. Accumulated replay credits can be discharged by tripping a reset switch.

On January 26, 1987, an officer of the Lincoln Police Department saw one of the machines at the Cellar Bar in Lincoln, Lancaster County, Nebraska. An unspecified number of individuals were observed playing the machine, and 92 free replay credits had been accumulated on it. The officer seized the machine, which was later found to contain $133 in quarters.

On that same day, the officer saw a second machine in Lincoln at the Spigot Tavern. A single individual was observed playing this machine, and a total of 21 free replay credits had been accumulated on it. This machine was also seized, and found to contain $140.25 in quarters.

There was no evidence or allegation that money had been given to any players of either machine in exchange for the replay credits they had accumulated.

At the time they were seized, both machines were registered and licensed with the Lancaster County assessor's office and had affixed to them mechanical amusement device stickers from the Nebraska Department of Revenue.

Schmit Industries challenges the constitutionality of Neb. Rev. Stat. § 28-1101(1) and (3) through (6) (Reissue 1989), § 28-1107, and § 28-1111, by asserting that these statutes are vague and overbroad and violate due process, contrary to the federal and state Constitutions; that they violate Schmit Industries' right to the pursuit of happiness, as guaranteed by Neb. Const. art. I, § 1; and that they impair or deny rights retained by the people under Neb. Const. art. I, § 26.

In order to have standing to challenge the constitutionality of a statute under either the federal or state Constitution, the challenger must be one who is, or is about to be, adversely affected by the statutory language in question and must show that as a consequence of the alleged constitutional violation the

challenger is deprived of a protected right. *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991); *State v. Crowdell*, 234 Neb. 469, 451 N.W.2d 695 (1990).

The challenged statutes provided the basis for the forfeiture of the two machines Schmit Industries owned, and its property rights were terminated through application of the statutes. Therefore, Schmit Industries has standing to present its challenges.

Although the assignments of error mention both vagueness and overbreadth, the discussion in Schmit Industries' briefs is limited to a claim of overbreadth. Since errors which are assigned but not discussed will not be considered by this court, *Horst v. Johnson, post* p. 155, 465 N.W.2d 461 (1991), and *State v. Cortis, ante* p. 97, 465 N.W.2d 132 (1991), we address only the overbreadth question.

Unlike a vagueness challenge, which questions the clarity of statutory language, an attack based on the overbreadth of a statute asserts that the questioned language impermissibly infringes upon some constitutionally protected right. See, e.g., *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990); *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988); *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987). The right involved here is the due process right to own and use property. See, *Buchanan v. Warley*, 245 U.S. 60, 38 S. Ct. 16, 62 L. Ed. 149 (1917); *Hibben v. Smith*, 191 U.S. 310, 24 S. Ct. 88, 48 L. Ed. 195 (1903). We begin our analysis by recalling that a statute may be unconstitutionally overbroad on its face only if its overbreadth is substantial, that is, when the statute would be unconstitutional in a substantial portion of the situations to which it is applicable. *State v. Kipf, supra*; *Osborne v. Ohio*, ____ U.S. ____, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973).

The focus of Schmit Industries' overbreadth challenge is the definition of "gambling device," as contained in § 28-1101(5). Such an item is defined as "any device, machine, paraphernalia, writing, paper, instrument, article, or equipment that is used or usable for engaging in gambling . . . ." As Schmit Industries correctly points out, numerous articles of

personal property are usable for engaging in gambling, articles which more often than not are innocently possessed. However, § 28-1101(5) is merely definitional; innocent possession of such articles is not prohibited. In order to trigger criminal liability or subject the article to forfeiture, the article must be possessed or employed "knowing that it shall be used in the advancement of unlawful gambling activity." § 28-1107(1).

As both the district court and the State point out, the challenge is comparable to one addressed in *Casbah, Inc. v. Thone*, 651 F.2d 551 (8th Cir. 1981), *cert. denied* 455 U.S. 1005, 102 S. Ct. 1642, 71 L. Ed. 2d 874 (1982). In *Casbah*, the U.S. Court of Appeals for the Eighth Circuit rejected a similar challenge to a statute prohibiting the use, sale, and manufacture of drug paraphernalia. The appellant in that case claimed that the statute was overbroad because innocent items fell within the statutory definition of prohibited drug paraphernalia. The *Casbah* court recognized that the statutory definition incorporated an intent requirement, so that an article could only be considered drug paraphernalia if there existed the requisite intent to use it with a controlled substance. This intent requirement prevented the statute from being overbroad. Here, while the definition of gambling device does not expressly contain an intent element, possession of articles which meet the definition is not prohibited absent knowledge that the articles will be used in the advancement of illegal gambling activity. Thus, the situation now before us is the same as that presented in *Casbah*. Innocent possession of an item is not prohibited; only items meeting the definition and possessed with the requisite mental state fall within the prohibitions. Consequently, Schmit Industries' overbreadth challenge is without merit.

The remaining constitutional challenges are merged into Schmit Industries' contention that forbidding the possession of its machines is not rationally related to any legitimate governmental purpose. When a fundamental right or suspect classification is not involved in legislation, the legislative act is a valid exercise of the police power if the act is rationally related to a legitimate governmental purpose. See *State v. Comeau*, 233 Neb. 907, 448 N.W.2d 595 (1989). While Schmit Industries

appears to concede that prohibiting gambling is a legitimate exercise of the State's police power, it argues that absent a showing of monetary payoffs, there is no rational basis for connecting the use of its machines with gambling.

The position is based upon a faulty and unwarranted assumption, i.e., that in order for there to be gambling, money must be bet against money. The Legislature, however, has seen fit to define gambling so as to include wagering for the extension of services or entertainment. See § 28-1101(6). The Legislature has thus determined that the ills associated with gambling are present whether the stake is entertainment, services, or cash, and it is not the function of the judiciary to second-guess the wisdom, policy, or expediency of legislative enactments. *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566 (1989); *Arant v. G.H., Inc.*, 229 Neb. 729, 428 N.W.2d 631 (1988).

Prohibiting gambling is a legitimate government purpose under the police power. See, *Midwest Messenger Assn. v. Spire*, 223 Neb. 748, 393 N.W.2d 438 (1986); *Pegasus of Omaha, Inc. v. State*, 203 Neb. 755, 280 N.W.2d 64 (1979). Prohibiting the possession or use of gambling devices is rationally related to preventing gambling; providing for the forfeiture of prohibited gambling devices likewise is rationally related to that purpose. Therefore, the statutes in question are a valid exercise of the State's police power.

The next question is whether the statutes were properly applied in this case. Statutes which impose forfeitures are subject to strict construction. *County of Merrick v. Beck*, 205 Neb. 829, 290 N.W.2d 642 (1980). Section 28-1111 provides that any gambling device which is possessed in violation of article 11 of chapter 28 "shall be forfeited to the state."

We are called upon to determine whether the machines described above are gambling devices which were possessed in violation of § 28-1107. We first must determine whether the machines are gambling devices and then determine whether they were possessed in violation of the statute.

As defined in § 28-1101(5), a gambling device includes "any . . . video gaming device which has the capability of awarding something of value, [or] free games redeemable for something

of value . . . except as authorized in the furtherance of parimutuel wagering." According to § 28-1101(4):

A person engages in gambling if he or she bets something of value upon the outcome of a future event, which outcome is determined by an element of chance, or upon the outcome of a game, contest, or election . . . but a person does not engage in gambling by:

(a) Entering into a lawful business transaction;

(b) Playing an amusement device or a coin-operated mechanical game which confers as a prize an immediate, unrecorded right of replay not exchangeable for something of value;

(c) Conducting or participating in a prize contest; or

(d) Conducting or participating in any bingo, lottery by the sale of pickle cards, lottery, raffle, or gift enterprise conducted in accordance with the Nebraska Bingo Act, the Nebraska Pickle Card Lottery Act, the Nebraska Lottery and Raffle Act, the Nebraska Small Lottery and Raffle Act, the Nebraska County and City Lottery act, or section 9-701.

A gambling device is therefore a device which is used or usable by a person to bet something of value on the outcome of a future event, which outcome is determined by an element of chance and which does not fall within one of the exceptions contained in § 28-1101(4). There is no question but that the outcome of the poker hands played on the machines in question is a future event determined by an element of chance, nor does Schmit Industries appear to deny this. Cf. *Indoor Recreation Enterprises, Inc. v. Douglas*, 194 Neb. 715, 235 N.W.2d 398 (1975) (poker and bridge are games of chance).

Thus, the question becomes whether the player bets something of value on the outcome.

Something of value shall mean any money or property, any token, object, or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service or entertainment.

§ 28-1101(6).

The 25 cents used to activate the machines is clearly something of value. The free replay credits awarded by the machines are a credit or promise involving extension of a service or entertainment and are therefore something of value. See, also, *Baedaro v. Caldwell*, 156 Neb. 489, 56 N.W.2d 706 (1953) (holding that free games on pinball machines are things of value for purposes of gambling statutes); *Score Family Fun Center v. San Diego Cty.*, 225 Cal. App. 3d 1217, 275 Cal. Rptr. 358 (1990) (reward of extended play on video machine is a "thing of value" within meaning of California Penal Code). The player of the game is betting his or her 25 cents (or accumulated replay credits) on the outcome of the play, while the machine is betting an extension of entertainment. Both parties are therefore betting something of value on the outcome, which is determined by an element of chance. Thus, unless the activity falls within one of the exceptions listed in § 28-1101(4), playing the machines is engaging in gambling, and the machines are gambling devices within the meaning of the statute.

The first exception, contained in § 28-1101(4)(a), is for entering into a lawful business transaction. It is possible, as Schmit Industries suggests, that this provision may be, in some cases, unconstitutionally vague; however, one who is engaged in conduct which is clearly within a statutory prohibition cannot complain that that prohibition is vague when applied to the conduct of another. *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). Whatever the lawful business transaction exception may include, it is at least clear that it does not include games and amusement devices. Otherwise, there would be no need for the more specific exceptions covering limited types of such devices found in §§ 28-1101(4)(b) and 28-1107, both of which are discussed below.

The second exception, found in § 28-1101(4)(b), is for "[p]laying an amusement device or a coin-operated mechanical game which confers as a prize an immediate, unrecorded right of replay not exchangeable for something of value." While the machines may qualify as amusement devices, the rights to replay which they award are not unrecorded, and, thus, the machines do not fall within this second exception.

The third exception, set forth in § 28-1101(4)(c), is for

"[c]onducting or participating in a prize contest." One of the characteristics of a prize contest, as defined in § 28-1101(7), is that the value of the awards does not depend upon either chance or the amount of consideration paid to participate in the contest. Here, the number of replays awarded is dependent upon the number bet and upon the nature of the hand dealt. Clearly, playing these machines does not qualify as a prize contest.

The final exception, established in § 28-1101(4)(d), is for "[c]onducting or participating in any bingo, lottery by the sale of pickle cards, lottery, raffle, or gift enterprise conducted in accordance with" specified statutes. Schmit Industries does not contend that the machines fit within this exception.

Having determined that the machines are gambling devices within the meaning of § 28-1101, we must determine if they were possessed in violation of § 28-1107. That section was amended after the machines were seized, see 1987 Neb. Laws, L.B. 523, and Schmit Industries raises a question as to which version should be applied, that which was in effect when the machines were seized or that which was in effect when the State filed its petition in the district court. Since the result under either version would be the same, we need not and do not reach this question.

Both versions of § 28-1107 provide:

> A person commits the offense of possession of a gambling device if he or she manufactures, sells, transports, places, possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody, or use of any gambling device, knowing that it shall be used in the advancement of unlawful gambling activity.

Both versions provide an exception for coin-operated games which award free replays. Under the earlier version of the statute, such games would fall within the exception only if they (1) could not accumulate more than 15 free replays at a time, (2) could not be discharged of accumulated replays except by playing an additional game for each replay accumulated, and (3) made no permanent record, either directly or indirectly, of the free replays they award. § 28-1107 (Reissue 1985). The later version of the section did away with the 15-replay limit. See

§ 28-1107 (Reissue 1989).

Because the machines are equipped both with reset switches and with meters which make a permanent record of the replays awarded, they fail to fit within the exception under either version of § 28-1107. Therefore, if the machines were possessed with the requisite knowledge, they were possessed in violation of § 28-1107 and thus subject to forfeiture under § 28-1111.

The existence of a required intent, knowledge, or other state of mind may be established through circumstantial evidence. *State v. Ayres,* 236 Neb. 824, 464 N.W.2d 316 (1991); *State v. Meyer,* 236 Neb. 253, 460 N.W.2d 656 (1990); *State v. Masur,* 230 Neb. 620, 432 N.W.2d 815 (1988).

Under the statutory scheme, playing these machines qualifies as engaging in gambling activity. As the district court said:

> Model FA180 video poker machines are "gambling devices" as defined by 28-1101(5) and can be used for no other purpose. [Schmit Industries] knew the machines would be used or played, as evidenced by the fact they were located in bars and contained a substantial number of quarters when they were seized. Clearly, [Schmit Industries] knew that these machines, having no other purpose except as gambling devices, were used in gambling activity.

We agree with the reasoning of the district court that the evidence establishes the machines were possessed with the knowledge that they would be used to engage in gambling activity.

In closing, we note that Nebraska does not stand alone in its determination that video poker machines equipped with meters and reset switches are gambling devices. See, e.g., *Gotsch v. City of Burbank,* 203 Ill. App. 3d 271, 560 N.E.2d 1183 (1990); *U.S. v. 294 Various Gambling Devices,* 718 F. Supp. 1236 (W.D. Pa. 1989); *Com. v. Twelve Video Poker Machines,* 517 Pa. 363, 537 A.2d 812 (1988).

AFFIRMED.