JAMES K. HORST, APPELLANT, V. KEVIN W. JOHNSON, APPELLEE.

465 N.W.2d 461

Filed February 1, 1991.   No. 88-1069.

Dorothy A. Walker, of Mowbray & Walker, P.C., for appellant.

Susan Jacobs, of Healey, Wieland, Kluender, Atwood, Jacobs & Geier, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Plaintiff-appellant, James K. Horst, challenges the dismissal pursuant to verdict of the suit he brought following a collision between the pickup truck he was operating and an automobile driven by defendant-appellee, Kevin W. Johnson. The first three of Horst's five assignments of error combine to assert the district court erred in (1) failing to grant the motion he made at the close of all the evidence for a directed verdict in his favor against Johnson on the issue of liability and (2) submitting to the jury the issue of his contributory negligence. The remaining two assigned errors claim that the verdict is contrary to law and not supported by the evidence and that the district court erred in failing to set aside the verdict and grant him a new trial, but they are not discussed in his brief. Errors assigned but not discussed in an appellant's brief are not considered by this court. *State v. Two IGT Video Poker Games, ante* p. 145, 465 N.W.2d 453 (1991); *State v. Cortis, ante* p. 97, 465 N.W.2d 132 (1991); *State v. Contreras,* 236 Neb. 455, 461 N.W.2d 562 (1990); *State v. Bradley,* 236 Neb. 371, 461 N.W.2d 524 (1990); Neb. Ct. R. of Prac. 9D(1)d (rev. 1989). We thus concern ourselves only with the first two summarized assignments and refer to the issues presented by the claimed but undiscussed errors only to the extent those issues are subsumed in the first two summarized assignments. The record failing to sustain the first two summarized assignments of error, we affirm.

At approximately 2 a.m. on October 18, 1986, Johnson left Omaha, Nebraska, in his automobile, destined for Hastings, Nebraska, where he was to begin certain U.S. Naval Reserve training at 7 a.m. He had concluded 7 consecutive days of work when he, on October 17, 1986, finished a 12-hour shift which ended at 7 p.m. Johnson spent at least 1½ hours after work during that same evening in a bar, where he consumed two or three beers before returning home to rest; he, however, did not sleep prior to leaving for Hastings. Johnson testified that while on Interstate 80 between Omaha and Lincoln, Nebraska, he became tired but was not dozing off.

Horst, driving a dark-green pickup truck, left Lincoln at approximately 3:30 a.m. on October 18, 1986, bound for Clay

Center, Nebraska, also via the Interstate. Horst testified that his headlights and taillights were working at the time.

As Johnson passed Lincoln on the Interstate, he became even more tired, such that he rolled down the windows of his automobile and played the radio loudly. Johnson testified that he then decided to look for a place to exit the Interstate due to his weariness. There was some ground fog in the lowlands at this point, and Johnson was traveling at approximately 55 miles per hour. No vehicle passed Johnson after he left Lincoln, the Interstate being "virtually abandoned." Johnson did notice two taillights in front of him from time to time, but he could not gauge their distance from him. Although they disappeared from his view from time to time because of the ground fog and hills, Johnson maintained a relatively constant distance between himself and the taillights. At this point the Interstate was newly paved, or blacktopped. Johnson traveled in the right-hand lane, focusing on the illuminated taillights ahead of him and the newly painted solid white line to his right and the dashed centerline of the Interstate to his left.

As Horst traveled westward, he also saw lighted taillights ahead of him. He began to get cool because a window in his pickup was rolled down, and he decided to pull off the Interstate to roll it up. He testified that he turned on his right turn signal, looked in his rearview mirror, and noticed a vehicle's headlights one-half to 1 mile behind him. According to Horst, he then pulled completely off the Interstate, took his pickup truck out of gear and his foot off the clutch, applied his emergency brake, and leaned over in his pickup to roll up the open passenger window. Horst's pickup was struck from behind as he began to roll up the window.

On direct examination by Horst, Johnson testified that he did not see the pickup until a split second before the collision and that he did not see lighted taillights on the pickup prior to the impact. He also testified on his own cross-examination that the rear portion of Horst's pickup extended 12 to 14 inches over the white line into the driving lane.

The collision occurred at approximately 4:15 a.m. on October 18, 1986, at a site approximately 800 feet below and beyond, as the vehicles moved west on the Interstate, the crest

of a hill. In daylight, the collision site was visible from the crest of the hill.

A Nebraska State Patrol trooper was the first investigating officer at the accident scene. The trooper found Horst's pickup on the right shoulder of the Interstate, with its front portion in the right-hand ditch. Johnson's automobile was found sideways on the driving surface, straddling the centerline of the westbound Interstate lanes. The trooper testified that Johnson told him at the accident scene that he was very sleepy and that the first he knew of the accident was when he hit Horst's pickup. The trooper smelled alcohol on Johnson's breath, but a preliminary breath test conducted at the scene showed that Johnson was not intoxicated.

The trooper took measurements from which he made an illustration of what was in his opinion a reconstruction of the collision. The trooper's testimony essentially corroborated Horst's contention that he had stopped his pickup completely off the traveled portion of the highway and was wholly within the shoulder of the Interstate.

A Lincoln Police Department lieutenant testified as Johnson's accident reconstruction expert. It was the lieutenant's opinion, based upon the trooper's measurements and illustration of the vehicles' postcrash positions, that Horst's pickup was parallel with and straddled the white line separating the right-hand driving lane from the shoulder, with approximately one-half of the pickup extended into the driving lane at the time of the collision. The lieutenant further opined that if Johnson's first sighting of Horst's pickup was a split second before impact, Johnson was not maintaining a proper lookout.

We begin our analysis by noting that when considering a motion for a directed verdict, the court resolves the controversy as a matter of law and may sustain the motion only when the facts are such that reasonable minds can draw but one conclusion. In considering the evidence for the purpose of a motion for directed verdict, the party against whom the motion is made is entitled to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence in favor of the party against whom the motion is

made, the case may not be decided as a matter of law. *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990); *McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803 (1990).

Horst places great reliance on the range of vision rule. Under this rule, which has been recognized in Nebraska since at least 1928, a motorist is generally deemed negligent as a matter of law if he or she operates a motor vehicle in such a manner as to be unable to stop or turn aside without colliding with an object or obstruction in the motorist's path within his or her range of vision. See, *Edgerton v. Lawry*, 235 Neb. 100, 453 N.W.2d 743 (1990); *Burkey v. Royle*, 233 Neb. 549, 446 N.W.2d 720 (1989); *Roth v. Blomquist*, 117 Neb. 444, 220 N.W. 572 (1928). Johnson's admission that he could not avoid colliding with Horst's pickup once he saw it would, at first glance, seem to fit within the rule.

However, an exception to or exoneration from the range of vision rule exists "when a motorist, otherwise exercising reasonable care, does not see an object or obstruction sufficiently in advance to avoid colliding with it because it is similar in color to the road surface and is thus relatively indiscernible." *Edgerton, supra* at 102, 453 N.W.2d at 744; *Converse v. Morse*, 232 Neb. 925, 442 N.W.2d 872 (1989).

The cases applying this exception commonly involve a nighttime collision with a stationary unlighted vehicle similar in color to the roadway. See, e.g., *Converse, supra*; *McClellen v. Dobberstein*, 189 Neb. 669, 204 N.W.2d 559 (1973); *Haight v. Nelson*, 157 Neb. 341, 59 N.W.2d 576 (1953). Not unexpectedly, only one Nebraska case which has applied the exception to the range of vision rule has involved a collision with a stationary lighted vehicle. See *Fick v. Herman*, 159 Neb. 758, 68 N.W.2d 622 (1955). Although this court has never announced a rule to the effect that the exception is not to be applied in cases where the stationary vehicle is lighted, even *Fick* does not lend strong support for generally allowing the exception to be considered in such situations. The *Fick* court noted that the stationary lighted truck involved was so dirty that the lights, though lit, might not have been so noticeable as to disallow application of the exception to the range of vision rule. Therefore, *Fick*

notwithstanding, the exception to the range of vision rule is generally not available where the stationary vehicle is lighted.

The initial question thus becomes whether there was any evidence that Horst's vehicle was such that it could be brought under the exception to the range of vision rule. If there was, keeping in mind the standard of review, the district court did not err in denying Horst's motion.

Horst claims that since the parties stipulated in a pretrial order that Horst's "exterior vehicle lights were illuminated," the color of his pickup is irrelevant because the exception to the range of vision rule does not apply to a lighted stationary vehicle. However, the pretrial order recites only that Johnson "will stipulate" that at the time of the collision Horst's "exterior vehicle lights were illuminated and his right turn signal was flashing." The record establishes neither that Johnson was asked to enter into such a stipulation nor that the parties in fact entered into such a stipulation and made the jury aware of it. Indeed, the very testimony Horst himself elicited from Johnson, that Johnson did not see lighted taillights on Horst's pickup prior to impact, supports an inference that the taillights were not lit at the time of the collision. Thus, it cannot be said that the question of whether the exterior lights of Horst's pickup were illuminated was undisputed.

The significance of the possibility that the exterior lights on Horst's pickup were not illuminated lies in the dark-green color of the vehicle and the fact that the Interstate at the location of the accident was newly paved. These circumstances create a fact question as to whether the pickup was virtually indiscernible and thus whether the exception to the range of vision rule should apply in this case. Thus, a directed verdict on the issue of liability could not properly lie.

Horst next contends that the district court nonetheless committed reversible error in submitting the issue of his contributory negligence to the jury because, as a matter of law, Johnson's negligence was the sole proximate cause of the collision. Not only did Horst not object to the instructions given, but his contention is otherwise without merit.

Contributory negligence is conduct for which a plaintiff is responsible, amounting to a breach of the duty which the law

imposes upon persons to protect themselves from injury and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury. *Koncaba v. Scotts Bluff County, ante* p. 37, 464 N.W.2d 764 (1991). See, also, *Mantz v. Continental Western Ins. Co.,* 228 Neb. 447, 422 N.W.2d 797 (1988); *McMullin Transfer v. State,* 225 Neb. 109, 402 N.W.2d 878 (1987); *Garreans v. City of Omaha,* 216 Neb. 487, 345 N.W.2d 309 (1984); *Mundy v. Davis,* 154 Neb. 423, 48 N.W.2d 394 (1951).

An actor is contributorily negligent if (1) he or she fails to protect himself or herself from injury, (2) his or her conduct concurs and cooperates with the defendant's actionable negligence, and (3) his or her conduct contributes to his or her injuries as a proximate cause. *Howells Elevator v. Stanco Farm Supply Co.,* 235 Neb. 456, 455 N.W.2d 777 (1990), citing *Cassio v. Creighton University,* 233 Neb. 160, 446 N.W.2d 704 (1989).

Horst urges that his pickup was merely a condition and not a concurrent proximate cause of the collision. In support of this claim, Horst cites us to *Vrba v. Kelly,* 198 Neb. 723, 255 N.W.2d 269 (1977). However, this case is distinguishable from *Vrba,* wherein during a severe snowstorm, the appellant's vehicle became stuck in a snowdrift about 90 feet below the crest of a hill. After unsuccessful attempts to dig the vehicle free, appellant left it on his right side of the highway and proceeded to his home on foot. He did not place flares, leave his lights on, or give other warning of the location of the vehicle. Later that night, a county road maintainer cleared a path approximately 10 feet wide in the center of the road. The following morning, the appellee, while driving down the hill, collided with appellant's vehicle, causing damage to the left front corner of each vehicle, that being the area of impact. The *Vrba* court refused to consider the appellee's defense of contributory negligence, which was based on the appellant's alleged violation of Neb. Rev. Stat. § 39-670(1) (Reissue 1988), which prohibits the leaving of a vehicle on a highway. In so concluding, the court noted it had

> previously held . . . . that such statutory requirements do not apply to disabled vehicles. Appellant's vehicle was disabled . . . . It could not be moved further from its

position and it is immaterial whether the cause of such immobility was a mechanical malfunction or the presence of drifted snow. The appellant did comply with the requirements of the statute so far as possible; the vehicle was stopped as far to the right as possible; there was an unobstructed space, the width of a maintainer blade opposite; and weather conditions rendered it impossible for the appellant or anyone else to provide a clear view of the vehicle for 200 feet in either direction. The evidence was not sufficient to support a finding of any negligence on the part of the appellant, but shows rather that the location of the appellant's vehicle was only a condition and could not operate as a concurrent cause of the collision.

*Vrba* at 726-27, 255 N.W.2d at 271.

Unlike *Vrba*, this case does not involve a disabled vehicle. Therefore, Horst's contention that his pickup was merely a condition is misplaced. Because there was evidence that Horst violated Neb. Rev. Stat. §§ 39-6,138 and 39-670.01 (Reissue 1988) (which require in pertinent part that taillights be illuminated at night) and § 39-670 (which requires in pertinent part that vehicles not be parked on a freeway), there was evidence that he was contributorily negligent. See, e.g., *Fleischer v. Rosentrater*, 190 Neb. 219, 207 N.W.2d 372 (1973) (violation of traffic statute evidence of contributory negligence). This point is emphasized by the following language from *Fleischer, supra* at 223, 207 N.W.2d at 374:

The evidence clearly supports . . . that the Fleischer vehicle was standing and stopped in the main-traveled portion of the roadway. Our court has consistently held that such facts constitute a prima facie violation of the statute sufficient to make a jury question and that it is incumbent upon the person charged to show the existence of facts which take him out of the scope of the statute.

This case falls squarely within the rule that where evidence is in conflict and such that reasonable minds may draw different conclusions therefrom, the questions of negligence and comparative and contributory negligence are factual determinations. *Gatewood v. City of Bellevue*, 232 Neb. 525,

441 N.W.2d 585 (1989). Therefore, the question of contributory negligence was properly submitted to the jury.

AFFIRMED.

WHITE, J., dissenting.

Today, we affirm a verdict in favor of the defendant, a motorist who collided with the rear of a lighted parked vehicle. We approve the submission of his negligence to the jury, our cases to the contrary concerning negligence as a matter of law notwithstanding.

The defendant stipulated in a pretrial proceeding that the plaintiff's vehicle was illuminated. The issue of illumination should never have been submitted to the jury, and a directed verdict should have been granted to plaintiff.