MARGUERITE "PEG" MARTIN AND ROY MARTIN, APPELLANTS,
V. BRAD J. ROTH, APPELLEE.

568 N.W.2d 553

Filed August 8, 1997.   No. S-95-1180.

Richard J. Rensch, of Raynor, Rensch & Pfeiffer, for appellants.

Michael F. Coyle and Colin Croft, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

WHITE, C.J., CAPORALE, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

The appellants, Marguerite "Peg" Martin (Martin) and her husband, Roy Martin, brought this consolidated personal injury and loss of consortium action against the appellee, Brad J. Roth, whose vehicle collided with the rear end of Martin's vehicle after sliding on gravel. The district court for Douglas County denied the Martins' motions for a directed verdict on the issue of liability and for a new trial. The Nebraska Court of Appeals affirmed the judgment in an unpublished memorandum opinion filed January 24, 1997. We granted the Martins' petition for further review and now reverse, concluding that Roth violated the "range of vision" rule when he rear-ended the Martins' vehicle. We also determine that under the facts of this case, neither the "indiscernible object" nor the "sudden stop" exception to the range of vision rule exists, and that the district court should therefore have directed a verdict on the issue of liability in favor of the Martins.

## FACTS

On December 30, 1989, Martin had just driven through the intersection of West Center Road and 132d Street in Omaha,

Nebraska, heading east, when she was forced to come to a stop because the cars ahead of her stopped. Roth was also eastbound on West Center Road, two cars behind Martin's vehicle. When the car between Martin and Roth switched lanes, Roth came upon Martin's stopped car and applied his brakes like he "normally would behind traffic," but his vehicle slid on gravel and collided with the rear end of Martin's vehicle. Roth's vehicle was then struck by a third vehicle, the driver of which is not a part of this action.

Martin brought suit against Roth for injuries allegedly sustained as a result of the collision. Roy Martin also brought suit against Roth for loss of consortium allegedly suffered as a result of the collision. The two cases were consolidated for trial.

Evidence of the weather conditions on the day of the collision established that it was a damp, overcast day. Roth testified that the temperature was approximately 30 degrees and that "there wasn't ice everywhere but we had some ice the night before," although there was no ice at the location of the collision. Roth further testified that on the day in question, he had traveled from the Millard area and had not encountered any gravel which caused him to lose traction. However, Roth did acknowledge his familiarity with the use of gravel on icy roads in Omaha:

Q. . . . Would you consider the rock a condition that you had to deal with on that particular day, the gravel?

[Objection overruled]

A. Definitely, yes.

. . . .

Q. . . . And [the collision] was in December; is that correct, also, the accident?

A. Yes.

Q. Had there been some snow and/or ice just sometime generally previous to that?

A. A couple days before, yes.

Q. Okay. Are you generally familiar with the fact that in Omaha, they put down sand and gravel in order to allow autos to have better tread when there is snow, that type of thing?

A. Sure.

Q. And are you generally — were you generally familiar at the time that when the snow melts and the ice melts or almost melted off, that there is some residual gravel around the streets during the winter months?

A. Yes.

At the conclusion of all the evidence, the Martins moved for a directed verdict on the issue of liability. The district court denied the motions and submitted the case to the jury. The jury returned verdicts in favor of Roth in both cases. The Martins subsequently filed motions for new trial, which were also overruled.

On appeal, the Nebraska Court of Appeals affirmed, stating in its memorandum opinion that

[w]e conclude that, based upon [the testimony adduced at trial], Roth did not have any reason to expect the gravel upon the road and there was nothing to place Roth on specific notice that the road would be slippery because of the "unusual amount" of gravel. It cannot be said, as a matter of law, that Roth should have anticipated the presence of the gravel on which his vehicle slid in time to have avoided colliding with Peg's vehicle. [Citation omitted.] As such, the district court properly refused to direct a verdict on the issue of liability.

## ASSIGNMENTS OF ERROR

Rephrased, the Martins allege that the Court of Appeals erred in (1) failing to reverse and remand the trial court's refusal to direct a verdict on the issue of liability in favor of the Martins based on the range of vision rule and (2) failing to grant the Martins' motions for new trial due to the trial court's failure to direct a verdict on the issue of liability.

## STANDARD OF REVIEW

A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Ethanair Corp. v. Thompson, ante* p. 245, 561 N.W.2d 225 (1997); *Hawkes v. Lewis, ante* p. 178, 560 N.W.2d 844 (1997). The party against

whom a verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996).

## ANALYSIS

The Martins contend that the district court was required, pursuant to the range of vision rule, to grant their motions for directed verdict on the issue of liability. Roth disagrees, contending that reasonable minds could differ and draw more than one conclusion from the evidence with respect to whether the facts of the instant case bring Roth's actions within one of the exceptions to the range of vision rule.

According to the range of vision rule, "a motorist is deemed negligent as a matter of law if he or she operates a motor vehicle in such a manner as to be unable to stop or turn aside without colliding with an object or obstruction in the motorist's path within his or her range of vision." *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 152, 555 N.W.2d 778, 785 (1996). An exception to this rule exists when a motorist, otherwise exercising reasonable care, does not see an object or obstruction sufficiently in advance to avoid colliding with it because it is similar in color to the road surface and relatively indiscernible. *Traphagan v. Mid-America Traffic Marking, supra*; *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995). We have also stated that a following driver need not anticipate that a motorist will suddenly stop or slow on a roadway and that where a dispute exists as to whether such a stop was made, the issue of the driver's negligence is for the jury. *Maurer v. Harper*, 207 Neb. 655, 300 N.W.2d 191 (1981).

### INDISCERNIBLE OBJECT EXCEPTION

In affirming the overruling of the Martins' motions for directed verdict, the Court of Appeals determined that the range of vision rule does not apply to the instant case because Roth

should not have anticipated the presence of gravel at the intersection. The Court of Appeals therefore concluded that the indiscernible object exception applied. In reaching this conclusion, the Court of Appeals examined two cases with similar facts, one of which applied the range of vision rule and the other of which applied the exception.

In *Burkey v. Royle*, 233 Neb. 549, 446 N.W.2d 720 (1989), a passenger suffered injuries when the car she was riding in was rear-ended by a vehicle driven by the defendant. The collision occurred at an icy intersection when the defendant driver unexpectedly hit "ice or a clump of snow," *id.* at 553, 446 N.W.2d at 723, causing her to slide into the vehicle in which the plaintiff was a passenger. The district court overruled the plaintiff's motion for a directed verdict on the issue of liability, and the jury found for the defendant. We reversed, holding that the range of vision rule required a directed verdict on the issue of liability and noting that the rule applies "notwithstanding that a motorist's ability to maneuver the vehicle is impaired by the presence of ice or snow upon the road surface." *Id.* at 555, 446 N.W.2d at 724-25. We also disregarded the position that since the patch of ice or snow the defendant slid on was unexpected, the indiscernible object exception applied, because "if the presence of ice or snow upon the road surface is known *or should have reasonably been anticipated*, the snow and ice are considered conditions rather than intervening causes and thus do not exonerate a motorist from the application of the range of vision rule." (Emphasis supplied.) *Id.* at 556, 446 N.W.2d at 725. In light of the inclement weather conditions and the presence of ice and snow on the roads on the day in question, we determined that the defendant was necessarily aware of the slick conditions and that a directed verdict should therefore have been entered.

One year after *Burkey*, we examined a similar factual situation in *Edgerton v. Lawry*, 235 Neb. 100, 453 N.W.2d 743 (1990). The record in that case showed that the defendant's vehicle slid on a patch of ice into the rear end of the plaintiff's stopped vehicle. The plaintiff's motion for directed verdict on liability was overruled and her case dismissed. Unlike the situation in *Burkey*, there was no ongoing storm nor were the streets covered with ice or snow at the time the defendant's car slid into

the plaintiff's car. Moreover, the plaintiff testified that she had driven 25 miles prior to the collision and had not encountered any ice. Based upon these facts, we concluded that the range of vision rule did not apply, finding that the defendant had no reason to anticipate the presence of ice on the road until she actually slid on it.

Roth asserts that the facts in the instant case are analogous to *Edgerton* insofar as he testified that he did not encounter any gravel prior to the intersection at the site of the collision. Roth therefore argues that he could not reasonably have expected the "unusual accumulation of gravel," brief for appellee at 13, that caused him to rear-end Martin's vehicle and that the indiscernible object exception to the range of vision rule applies. A review of the record, however, reveals that Roth also testified that he was aware that the city of Omaha routinely places gravel on the roads during times of inclement weather and that such gravel would remain on the streets after the ice or snow had melted. Roth also testified that there had been ice and snow 2 days before the accident and that he had encountered ice at certain locations on the day of the collision. Based upon this testimony, we cannot conclude that Roth was unaware that gravel would be on Omaha roads that day. Gravel, like snow or ice, is a condition of the road during periods of inclement weather and is not an intervening cause such that its presence prevents application of the range of vision rule. As such, we disagree with Roth's contention that he must be placed on *"specific notice,"* brief for appellee at 15, of gravel at intersections, for the test is whether Roth knew or should have known that gravel could be on the streets of Omaha, thereby altering driving conditions on the day of the collision.

Roth nevertheless argues that the gravel he slid on was an "unusual" amount, such that a jury must decide whether he was liable for rear-ending Martin's vehicle. However, Roth offered no evidence as to the depth, volume, or specific amount of gravel he encountered, nor did he offer any explanation as to why he considered the amount of gravel at the intersection to be unusual. Regardless, having concluded that Roth should have been put on notice of the presence of gravel on the streets of Omaha on the day in question, we can discern no reason to

make application of the range of vision rule dependent upon the amount of gravel Roth opines he encountered. Just as the depth of snow or ice is irrelevant for purposes of applying the rule, so, too, is the amount or depth of gravel. Indeed, as the amount of gravel present increases, so, too, should the driver's awareness of that condition. Accordingly, we disagree with Roth's contention that the indiscernible object exception applies to the facts of this case.

### Sudden Stop Exception

Roth also contends that the district court was correct in overruling the Martins' motions because the evidence established that Martin made a sudden stop prior to her vehicle's being rear-ended, thereby invoking the sudden stop exception to the range of vision rule. After viewing all relevant facts in favor of Martin, we conclude that the only reasonable inference to be drawn is that Martin did not come to a sudden stop prior to her vehicle's being rear-ended.

On direct examination, Martin did testify that the car in front of her stopped abruptly, causing her to stop suddenly. However, on both direct and cross-examination, Martin stated that her vehicle was not rear-ended until 30 to 60 seconds after she came to a stop. Roth offered no testimony that Martin came to a sudden and unexpected stop in front of him. Indeed, as the following testimony of Roth shows, he was well aware of stopping vehicles in his lane of traffic and in no way attributed the cause of the collision to Martin's "sudden stop":

Q. And this vehicle then moved from your lane into the next lane; is that correct?

A. Yes, it did.

Q. And after he did so, were you able to observe whether there was traffic in your lane?

A. Yes.

Q. And tell the ladies and gentlemen of the jury what you saw.

A. I saw stopped or very slow moving traffic in my lane.

Q. And did you observe the automobile that was owned and operated by Mrs. Martin?

A. Yes, I did.

Q. And was her car directly in front of your car?

A. Yes, it was.

Q. Did you hit your brakes, then?

A. Yes, I did.

Q. Did it slow your vehicle down?

A. Not — it did at first, yes.

Q. Okay. And then tell the ladies and gentlemen of the jury what happened.

A. Okay. I was coming to a stop like I normally would behind traffic and all the sudden — I mean I wasn't — I noticed I wasn't getting the same amount of braking as I was a few seconds earlier. It was — I was sliding on gravel, and I did that until I hit the back of Mrs. Martin's car.

Absent conflicting evidence as to whether a driver brought his vehicle to a sudden and abrupt stop, the determination of whether the sudden stop exception to the range of vision rule applies is to be determined as a matter of law. See *Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp.*, 161 Neb. 152, 72 N.W.2d 669 (1955). The evidence, even when viewed in a light most favorable to Roth, establishes that Martin's vehicle was completely stopped prior to being rear-ended 30 to 60 seconds later by Roth, who applied his brakes like he "normally would behind traffic." Thus, despite Martin's characterization of her stop as a sudden one, we conclude that the testimony adduced concerning what actually happened provides no evidence of a sudden and abrupt stop such that the sudden stop exception to the range of vision rule applies.

## CONCLUSION

Like any other driver on Nebraska's roads, Roth was required to operate his vehicle in such a manner as to be able to stop or turn aside without colliding with an object or obstruction in his path within his range of vision. Because Martin's vehicle was within Roth's range of vision and neither exception to the range of vision rule applies, we conclude that the district court erred in failing to grant the Martins' motions for directed verdict on liability. We therefore reverse the Court of Appeals' decision and remand this cause for a trial on dam-

ages. In light of this holding, we do not address the Martins'
second assigned error.

REVERSED AND REMANDED FOR A NEW TRIAL
ON THE ISSUE OF DAMAGES.

WRIGHT, J., not participating.

STEPHAN, J., dissenting.

I agree with the majority that our decisions in *Burkey v.
Royle*, 233 Neb. 549, 446 N.W.2d 720 (1989), and *Edgerton v.
Lawry*, 235 Neb. 100, 453 N.W.2d 743 (1990), provide an
appropriate framework for analysis of this case. I respectfully
disagree with the manner in which the majority applies those
decisions to the evidence in the record.

In my view, the critical inquiry is whether the motorist knew
or should have known of a road surface condition which would
affect his ability to stop or control his vehicle at the time and
place of the accident. In *Burkey*, the motorist testified that sleet
was falling and that there was ice and packed snow on the road
surface where the accident occurred. She was aware of these
conditions just before the accident and realized that they
affected her ability to control and stop her vehicle. We held that
because of this knowledge, she was not exonerated from appli-
cation of the range of vision rule and was negligent as a matter
of law.

However, in *Edgerton* we affirmed a judgment in favor of a
motorist whose vehicle hit a patch of ice and slid into another
vehicle, stating: "Unlike the situation in *Burkey*, there was . . .
no ongoing storm nor were the streets covered with ice or snow,
circumstances which should put any reasonable driver on notice
of the prevailing dangerous conditions *and on specific notice of
the fact the streets were slippery*." (Emphasis supplied.) 235
Neb. at 102, 453 N.W.2d at 745. We further noted that although
there had been recent freezing and thawing, neither driver had
encountered any ice prior to reaching the scene of the collision
and that the defendant had no reason to be aware of the ice on
the roadway until it was too late to avoid the collision. *Id.*

I disagree with the majority in that I read these cases as
requiring some form of "specific notice" that a road surface is

slippery before a motorist can be held negligent as a matter of law for failing to avoid a collision despite slippery conditions. Roth admitted that he was generally aware of gravel on the streets of Omaha during the winter, but he testified that its presence that day had not affected his ability to stop his vehicle prior to the collision. The record indicates that he did not actually see the "unusual amount" of gravel on which he slid until after the accident. In fact, he had no opportunity to see this particular section of the road surface until the vehicle ahead of him changed lanes to avoid colliding with Martin's stopped vehicle. He testified that he applied his brakes immediately after this occurred, but was unable to avoid the collision because his vehicle "slid" on the gravel.

I agree with the Court of Appeals that the material facts of this case are more similar to *Edgerton* than *Burkey*. Like the defendant in *Edgerton*, Roth had no awareness of the slippery road condition caused by the presence of gravel until moments before the collision. Giving Roth the benefit of all reasonable inferences, as required on a motion for directed verdict, a reasonable person could find that Roth had no actual knowledge of, or reason to anticipate, gravel on the road surface in an amount sufficient to affect traction and braking until it was too late to avoid the collision. Thus, in my view, the issue of whether Roth was negligent in operating his vehicle was properly submitted to the jury for decision, and I would therefore affirm.

CAPORALE, J., joins in this dissent.